Kathleen GOODRICH, a feme sole, Appellant,

v.

Floyd A. TINKER, Appellee.

No. 5978.

Court of Civil Appeals of Texas.

El Paso.

Feb. 12, 1969.

Rehearing Denied March 5, 1969.

Scott, Hulse, Marshall & Feuille and Charles R. Jones, Richard T. Marshall, El Paso, for appellant.

William L. Merkin, Kemp, Smith, White, Duncan & Hammond, El Paso, for appellee.

## OPINION

PRESLAR, Justice.

This cause of action was brought by Floyd A. Tinker, for personal injuries and damages arising out of an automobile collision. The defendant filed a cross-action for her damages arising out of the accident, and International Insurance Company intervened for Mr. Tinker's automobile damage. The trial of the case was to a jury and the verdict was in all respects favorable to the plaintiff-appellee. Judgment was entered in favor of the plaintiff-appellee Tinker against the defendant-appellant in the sum of $7,200.00, and in favor of the intervenor, International Insurance Company, against the defendant-appellant for the sum of $1,636.55 for the automobile damages. From such judgment the defendant Goodrich appeals, presenting some eleven points of error.

Appellant's first and second points of error complain of the admission into evidence of the testimony of Dr. Saul Gonzalez for the reason that such doctor was an examining or testifying doctor, and his opinions as to the diagnosis and prognosis of the plaintiff's alleged injuries were based and founded on subjective statements of the plaintiff and prior history and medical reports of the physical condition of the plaintiff, which records and reports were not in evidence. We are of the opinion that the admission of such evidence was error and that the case should be remanded for another trial.

At the time of the accident which is the basis of this lawsuit, plaintiff-appellee Tinker was in the army and received medical attention and treatment at the army hospital following the accident. He was apparently treated by several military doctors, none of whom were called as witnesses in the trial. The doctor who was called as a witness, and whose testimony

is in question here, was Dr. Saul Gonzalez, who saw appellee Tinker only one time, and that some eighteen months after the accident. Appellant relies upon the established rule of law that a doctor who is not a treating doctor and who examines the patient for the purpose of making a report or testifying if necessary in court cannot base his opinion testimony as to the condition and prognosis of the injury to the plaintiff upon the subjective complaint and history of the case. Such opinions must be based on a study of objective symptoms and x-rays. Pacific Employers Insurance Company v. Gibson (Tex.Civ.App.1967) 419 S.W.2d 239 (and many cases therein cited); Traders and General Ins. Co. v. Chancellor (Tex.Civ.App., El Paso, 1937), 105 S.W.2d 720, writ dismissed (and cases therein cited); Texas & N. O. R. Co. v. Stephens (Tex.Civ.App.), 198 S.W. 396; Texas Employers Ins. Ass'n v. Wallace (Tex.Civ.App.), 70 S.W.2d 832; Traders & General Ins. Co. v. Rhodabarger (Tex. Civ.App., El Paso), 93 S.W.2d 1180; and Gaines v. Stewart (Tex.Civ.App.1933) 57 S.W.2d 207. Appellee agrees that if Dr. Gonzalez was only an "examining" or "testifying" doctor, then his opinions based upon the prior medical history and subjective symptoms should not have been admitted. Appellee contends that Dr. Gonzalez was not an examining doctor, but was, in fact, a treating doctor because he did in fact examine appellee Tinker and did treat him in that he prescribed treatment for him. We do not think the matter is as simple as deciding by definition alone whether the doctor was a "treating" doctor or an "examining" doctor. If such were the case, the ruling would have to be against appellee, for what was done does not amount to "treatment" as defined in Black's Law Dictionary, Fourth Edition, page 1673: "TREATMENT. A broad term covering all the steps taken to effect a cure of an injury or disease; the word including examination and diagnosis as well as application of remedies. Kirschner v. Equitable Life Assur. Soc. of U. S., 157 Misc. 635, 284 N.Y.S. 506, 510; Hester

v. Ford, 221 Ala. 592, 130 So. 203, 206." Simply deciding whether the doctor was an examining or treating doctor by definition will not decide the questions here presented as to whether the expert opinions expressed were admissible. Rather, we must look to the foundation of such expert's opinion and, to some extent, the basis and reasons for the above rule. The rationale or reasons behind the above rule are discussed and set forth in Pacific Employers Insurance Company v. Gibson, supra, with the following quotation, among others, from Gaines v. Stewart, Tex.Civ.App., 57 S.W.2d 207:

" 'The test in such case appears to be whether the motive and opportunity to fabricate without detection the symptoms complained of is presented. Undoubtedly a qualified physician can testify as to symptoms and conditions of injury or disease made known to or discovered by him in his treatment of his patient. Or to such conditions as he finds in the patient from his own independent examination of him. But where an injured party, for the express purpose of qualifying a physician to testify in his behalf about matters on which such party seeks recovery, makes statements as to subjective matters of pain, suffering, etc., not disclosed to the physician by other and independent means, there exists both motive and opportunity for the patient to magnify or feign injuries. Under such circumstances his statements become clearly self-serving and hearsay, and should not be admitted.' "

And the Gibson case further quotes from Texas Employers Ins. Ass'n v. Wallace, Tex.Civ.App., 70 S.W.2d 832, as follows:

" 'We are of the opinion that the foregoing testimony, admitted over said objections, was inadmissible. The doctor's opinion was based in some undetermined measure, and in part, at least, upon hearsay statements made to him by the injured employee. It is a sound rule of law which prohibits the intro-

duction of such testimony. The opinion of an expert should not be permitted to go to a jury when the same is predicated in whole, or in part, upon the unsworn statement of an interested party who may be tempted to unduly magnify the basis or grounds upon which the validity of the opinion depends. To permit the expert's opinion, based upon such statements pertaining to history of case and subjective symptoms, to go before the jury, would open the door for the grossest fraud by affording the litigant an opportunity to magnify his injuries or suffering and enhance the damages by incompetent, self-serving statements in effect carried before the jury by the expert and bolstered up by his opinion.' "

Underlying the reasons for the admissibility or non-admissibility of such evidence is the more basic reason that the expert opinion must be formed from facts. Thus, a treating physician can testify or render an opinion because his opinion is based on objective findings—facts found by him or known to him from his treatment or examination. On the other hand, an examining or testifying physician bases his opinion on "facts" given to him by the patient or "facts" taken from hearsay reports and records. Much argument is presented in the briefs before us as to whether Dr. Gonzalez was a treating or examining doctor because he did not himself treat, but did prescribe treatment, which was never followed; and because he only saw the patient on this one occasion and that was some eighteen months after the accident. As indicated, we do not think these considerations are controlling of the question as to the admission of the evidence, but rather its admissibility goes to the facts as found by the doctor and upon which his opinion was based. It was Dr. Gonzalez' opinion that the plaintiff's injury consisted of a moderate to severe sprain of the neck. The doctor expressed the opinion that the plaintiff's condition would cause pain; that such pain would medically, probably, be experienced for the rest of his natural life; that it would tend to get worse in the future; that it was reasonably probable that his condition would require surgery in the future in the nature of a fusion of two vertebrae; that the cost of such an operation would be from $1,500 to $2,-000, plus a surgeon's fee of $600; that it would result in total disability for a period of time from three to six months. In all, the testimony of Dr. Gonzalez covered about 100 pages in the Statement of Facts, and from a careful examination of it we find one objective symptom—an audible popping sound when the neck was extended. That, he said, caused no pain, and he attributed it to the natural process of aging. He found tenderness in a portion of the neck area which caused pain when he applied pressure. This, he said, was a subjective symptom, but evident to him. Dr. Gonzalez was also of the opinion that appellee Tinker suffered a 20 per cent disability to his body as a whole as a direct and proximate result of the accident. As we view Dr. Gonzalez' testimony, his opinions were based upon (1), the one objective finding, (2) what the patient told him, and (3) the army medical records covering his twenty years of military service, which records the doctor reviewed after his examination, and which were not in evidence. We think his opinions were inadmissible under such state of the record.

◼ Appellee relies upon cases in which the doctor's opinions were based upon both what the patient told him and objective facts. We do not think this case falls within the cases relied upon, but rather that it falls within the rule above announced. In Liberty Insurance Company of Texas v. Land, 397 S.W.2d 900, the testimony of Dr. Trimble was permitted when questioned on the basis that he was an examining doctor and not a treating doctor; yet the evidence shows that Dr. Trimble was the surgeon who *operated* on and treated Land for perforation of the colon, from which he later died. And in Texas Employers' Ins. Ass'n v. Morgan, 187 S.W.2d 603 (wr. ref., w. m.) the court simply stated that the doctor did give him treatment.

There is no explanation of what the treatment consisted of, so that case is of no help here. In Austin Road Company v. Thompson, 275 S.W.2d 521 (ref. n. r. e.), the admissibility of certain testimony of one Dr. Levy was challenged because "Dr. Levy never treated plaintiffs and was hired for the purpose of testifying in this case." After much discussion as to the purpose for which the plaintiff-appellees had gone to Dr. Levy, that is, whether it was for the purpose of treatment or for the purpose of testifying, the court concluded that the evidence as a whole showed that the appellees went to Dr. Levy for diagnosis and treatment, and that they did not go to him for the purpose of qualifying him to testify as a witness. The court concluded that since the appellees went to Dr. Levy for treatment, his testimony was admissible. In that case the doctor whose testimony was challenged, Dr. Levy, referred the appellees back to their doctors who had been treating them and wrote such doctors his recommended treatments, and they were so treated. Dr. Levy was seen by the wife on three different occasions, and the husband saw Dr. Levy on two separate occasions, and the wife testified that she was treated three times by her original doctors as recommended by Dr. Levy. Such is not the case before us, for Mr. Tinker saw Dr. Gonzalez only one time; did not follow the prescribed treatment of wearing a neck collar, continuing physical therapy, taking a muscle relaxant and pain pills; nor did he go back to Dr. Gonzalez in order that such treatment could be evaluated. Also important in the Austin Road Co. v. Thompson case is the opinion of the court that the error, if any, in admitting Dr. Levy's testimony was harmless as to the wife because there was no finding by the jury as to future medical expenses. As to the husband, the finding as to future medical and doctor expenses was remitted by him to cure any error. In the case before us, Dr. Gonzalez was the only medical expert who testified, so that his testimony was not cumulative of any other of the same kind and charac-

ter, and was the only evidence to support the issue as to future medical expense. In the late case of Miller Mutual Fire Insurance Co. of Texas v. Ochoa, Tex.Civ.App., 432 S.W.2d 118 (ref. n. r. e.), the challenged testimony of Dr. Constant was not found to present reversible error. The record in that case reflects: " However, the doctor testified extensively that his examination included many objective findings which assisted in formulating his opinion." The court held that the evidence was properly admitted and then said: "In any event if the trial court was in error in admitting such evidence it was not reversibly harmful to appellant under Rule 434 Texas Rules of Civil Procedure. It is not reasonably probable that Dr. Constant's testimony persuaded the jury to its verdict, when this testimony was cumulative to all of the other evidence in the record." We think that the evidence here complained of was inadmissible and, from a consideration of the whole of the record in this case, we conclude that such inadmissible evidence was reasonably calculated to and did cause the rendition of an improper verdict and resulting judgment. Pittman v. Baladez, 158 Tex. 372, 312 S.W.2d 210 (1958).

■ The evidence which we have determined was not admissible affects the damage issues in the case, but we do not construe this as a case where the issues are severable, so that partial remand under Rule 434 Texas Rules of Civil Procedure is not possible. Issues of liability and damages have been held not to be severable in cases which we think are of the character of this case and are controlling of our disposition of it. Waples-Platter Co. v. Commercial Standard Ins. Co., 156 Tex. 234, 294 S.W.2d 375 (1956); Houston Natural Gas Corporation v. Janak, 422 S.W.2d 159 (Tex.1967). Under such circumstances, there is no point in our passing on the other points of error.

The judgment of the trial court is reversed and the cause remanded for trial on all issues.