CITY OF WICHITA FALLS, Texas,
Appellant,

v.

Grady B. JONES et al., Appellees.

No. 17127.

Court of Civil Appeals of Texas,
Fort Worth.

June 12, 1970.

- - - - ◆ - - - -

H. P. Hodge, Jr., City Atty., and Malcolm L. Hughes, Asst. City Atty., Wichita Falls, for appellant.

Friberg & Parish, and J. Walter Friberg, Wichita Falls, for appellees.

## OPINION

BREWSTER, Justice.

This condemnation case was brought by the City of Wichita Falls against Mr. and Mrs. Grady B. Jones to acquire the fee simple title to a part of a lot owned by the latter for use in a street building project.

For the sake of brevity we will refer to the City of Wichita Falls throughout this opinion as the City.

Mr. and Mrs. Jones owned Lot 16, Block 54 of the Addition in question. This lot was 120 feet across the front or west side, 120.9 feet across the rear or east side, 200.6 feet across the north side and 186 feet across the south side.

The land being taken by the City was a part of this Jones' lot was triangular in shape, and was off the southeast corner of the lot. This triangular piece of land was 28.74 feet off the south side of the lot, 30.65 feet off the east side or rear part of the lot, and the hypotenuse of the triangle was 44.45 feet in length. No part of any building on the lot was located on the part taken by the City.

All but three questions were removed from the case by stipulation of the parties. The three questions left to be decided by trial were: (1) the market value of the triangular piece of land that the City took title to, considered as severed land, immediately before the taking; (2) the market value of the rest of the Jones' lot, excluding the triangular part that the City took fee simple title to for the purpose of building the street, immediately before the fee simple title to that part was taken by the City; and (3) the market value of the Jones' lot, excluding the triangular part taken by the City, immediately after this triangular part was taken by the City.

These three questions were submitted to a jury and answered by it as follows: (1) $750.00; (2) $66,750.00; and (3) $60,750.00.

On receipt of this verdict the trial judge rendered judgment against the City and in favor of Mr. and Mrs. Jones for $6,750.00 with interest from July 18, 1969 (the date of the taking).

This appeal by the City is from that judgment and urges 24 points of error.

Before any evidence was offered in the trial of the case the City filed and presented to the court an instrument it designated as a "Motion to Suppress Evidence." It was what lawyers commonly call a Motion in Limine. The City sought by the motion to have the trial judge order counsel for the condemnees to refrain from making statements about, referring to, or offering evidence during the trial bearing on nine different matters.

The Statement of Facts shows that when this motion was presented to the judge in

limine he sustained paragraphs 1, 2, 4 and 5 of the motion and overruled all other parts of it.

In its points of error numbered 1, 2, 3, 4, 5, 7, 16 and 19 the City contends that the trial court committed reversible error by his action in overruling a particular paragraph of the City's Motion to Suppress Evidence or Motion in Limine.

It is not necessary in passing on these points to here set out in this opinion the contents of the various paragraphs of this Motion in Limine.

■ The Supreme Court in 1963 settled the law in Texas on this point by holding in substance that a trial judge can never commit reversible error by just overruling a motion in limine which has as its objective the suppression of evidence. See Hartford Accident and Indemnity Co. v. McCardell, 369 S.W.2d 331 (Tex.Sup. 1963).

Since the trial court's ruling complained of in the City's points of error numbered 1, 2, 3, 4, 5, 7, 16 and 19 can never constitute reversible error, as held by the Supreme Court in the Hartford Accident and Indemnity Co. case, supra, we overrule each of those points.

The following is quoted from the opinion in the Hartford Accident and Indemnity Co. case, supra, on page 335: "It seems that the converse of our holding in the Bridges case [Bridges v. City of Richardson, Tex., 354 S.W.2d 366] is that although the overruling of a motion in limine may be error, it is never reversible error.

"If a motion in limine is overruled, a judgment will not be reversed unless the questions or evidence were *in fact* asked or offered. If they were *in fact* asked or offered, an objection made at that time is necessary to preserve the right to complain on appeal that such questions asked or such evidence tendered were so prejudicial that the mere asking or tendering should require a reversal. In neither case

* * * should the error of the trial court in overruling the motion in limine be regarded as harmful or reversible error."

■ The statement of facts here reveals that when the evidence that the City claims to be germane to its points of error numbered 1, 2, 3, 4 and 5 was actually introduced during the trial of the case that counsel for the City made no objection whatever to such evidence.

Under the holding of the Hartford case, supra, the City cannot complain of that admission of such evidence where it made no objection to it at the time it was offered. These are additional reasons why we must overrule the City's first 5 points of error.

■ The City contends in its point of error No. 6 that the trial judge committed reversible error in permitting the condemnee, Jones, to testify in answer to a question from his counsel that an island would be in the center of the street being built. We overrule this point because the city attorney made the same proof himself later during the trial while conducting the direct examination of the city engineer, Mr. Deland. Deland testified in substance that the plans for the street in question call for 2 lanes in either direction separated by a median.

It is not necessary here for us to even pass on the question of the admissibility of such evidence. This is true because even if the evidence was inadmissible it could not constitute reversible error in this case. A litigant cannot successfully complain of the admission of evidence as being reversible error where such complaining party did himself offer into evidence testimony from another witness to establish the same facts that he now complains of. Slayden v. Palmo, 108 Tex. 413, 194 S.W. 1103 (1917); Missouri-Kansas-Texas RR. Co. v. Shelton, 383 S.W.2d 842 (Dallas Tex.Civ. App. 1964, ref. n.r.e.); Medina Electric Cooperative, Inc. v. Ball, 368 S.W.2d 227 (San Antonio Tex.Civ.App., 1963, no writ hist.).

The City's points of error Numbered 8, 9, 12 and 18 all involve the same legal proposition. We will discuss them together.

In each of those points the City complains of a different ruling made by the trial judge pertaining to the exclusion of evidence.

In each instance the ruling complained of was made while the attorney for the City was examining a witness. He would ask the witness a question and before it was answered the attorney for the condemnee would object to the question. In each of the 4 instances the trial judge sustained the objection made to the question by the condemnee's attorney.

■ The record does not show what the answer of the witness to any of the 4 questions would have been had they been permitted to answer. To properly complete a bill of exceptions on each of these points the attorney for the City was required to make the record show what the witness' answer would have been if he had been permitted to answer the question. In the absence of such showing it is impossible for the City to show that the rulings complained of are in any way harmful to it. This is true because this Court cannot assume that in any of the 4 instances involved the witness would have answered the particular question favorably to the City. They could have just as easily answered such questions favorably to the condemnees and in such event the ruling complained of could not have been harmful to the City.

In support of our holding we refer to the following: J. Weingarten, Inc. v. Brockman, 134 Tex. 451, 135 S.W.2d 698 (1940), and Miller v. Cozart, 394 S.W.2d 22 (Dallas Tex.Civ.App., 1965, no writ hist.).

The City's points of error 8, 9, 12 and 18 are overruled.

■ By its 10th point the City contends that the court erred in not allowing the condemnee, Jones, to testify about the vacant land surrounding his home and what was to be done with it.

A reference to the City's brief and to pages 20 and 21 of the statement of facts, which reflects the proceedings complained of, shows that the trial judge is unjustly accused. The only objection made to this testimony was made by the condemnee's attorney and not by the City. The court overruled the condemnee's objection and permitted the witness to go ahead and answer the questions about the vacant property propounded by the City Attorney. This does not show prejudicial error against the City. We overrule this point.

■ The City complains in its 11th point that the court erred in permitting the witness, Healy, to testify as to his opinion as to the value of the property.

We overrule this point because the record shows that the City made no objection at all to such evidence during the trial. The first time complaint was made by the City about it was on motion for new trial. This was too late.

■ The City contends in point 13 that the trial judge erred in admitting testimony of the witness, Combs, as to the value of furniture and fixtures.

The City had called this man as a value witness. He was a realtor and an appraiser and while testifying on direct examination by the City attorney he had testified that his opinion was that the market value of the part of the Jones' lot that the City took title to was $294.00. He testified that the market value of the rest of the Jones' lot, excluding the part taken, just before the taking was $64,706.00. He then testified that the value of this same part of the Jones' lot (all of it except the part the City took) just after the taking was the same amount or $64,706.00. In other words the witness said that no damage was

done to the rest of the lot by the City's taking of the triangular part of it that they did take.

The condemnee's attorney then cross-examined this witness in detail as to the various items that the witness had considered in reaching his conclusions as to these valuations.

During this cross-examination the matter complained of in point 13 occurred in the way set out below.

Question (by condemnee's attorney):

"Q. Oh, that is included in the $10,000.00 too? How about for the carpeting and drapes? Is that in the $10,000.00 too?

"A. No, I would have had that in the $12.00 a square foot for the basic house.

"Q. You would have had that in the $12.00 a square foot for the basic house?

"BY MR. HUGHES: Your Honor, I object to the questions as to furniture and fixtures. That is not admissible in evidence. We are evaluating, in condemnation, real property and not furniture and fixtures. The furniture and fixtures can be moved and that is not to be considered.

"THE COURT: Overrule the objection.

"BY MR. HUGHES: Note my exception."

This does not reflect error. Counsel for condemnee had the right to cross-examine this witness in detail about the matters that he considered in arriving at the valuations he had testified to. If the City's witness had considered improper items such as furniture, in determining his estimate as to the value of the realty, counsel for condemnee was entitled to prove that fact so the jury would know it.

Even if this point had reflected error, it would not constitute a reversible error as defined in Rule 434, Texas Rules of Civil Procedure.

There was nothing that the witness Combs said that was harmful to the City.

All of his testimony was in the City's favor. He testified that the value of the remainder of the Jones' property, just before and just after the taking, was the same. The taking thus resulted in no damage to the remainder of the Jones' property. Even if the witness did wrongfully consider the carpets and drapes which were located wholly in the house on the remainder, he did it in reaching his opinion as to the value of the remainder before the taking and also in reaching his opinion as to the value of the remainder after the taking. They thus countered each other and could have resulted in no harm to the City.

This point 13 is overruled.

The City in its 14th and 15th points contends that reversible error was committed by the trial judge in overruling the City's objection to all the testimony of the witness, Healy, concerning the value of the Jones' property.

Both parties admit that the date of the taking of the Jones' land was July 18, 1969. No one questions the fact that the date of the taking was the proper date as of which all market value questions were to be determined. On direct examination this witness had stated his opinion as to the various valuations that were involved. On cross-examination by the attorney for the City he stated that he was on this property in September, 1969, and he was also there the day before the trial (November, 1969).

The proceedings hereafter set out then occurred during this cross-examination:

"Q. Now, were you on the property prior to or on the date of July 18, 1969?

"A. I could not say whether I was or not. I made several appraisals in that area, but I don't know whether I was on this particular property or not. I appraised the one two doors down from it belonging to Crawford.

"BY MR. HUGHES: Your Honor, I am going to object to all the testimony that Mr. Healy has offered here as a subse-

quence to the date of taking, and is, therefore, not admissible.

"RE–DIRECT EXAMINATION

"BY MR. PARISH:

"Q. Mr. Healy—may I ask him one question, your Honor?

"THE COURT: Ah, yes.

"BY MR. PARISH: Mr. Healy, would your testimony that you have given here apply to the value as of that date regardless of when you went on it, as of July the 18th or prior thereto?

"A. Yes, sir, that wouldn't have anything to do with it.

"Q. When you went on there wouldn't have anything to do with what the value was on July the 18th.

"A. No, sir, there would have been no changes in there. It would have been the same.

"THE COURT: Overrule the objection.

"BY MR. HUGHES: Note our exception."

The City is apparently contending that since the value witness, Healy, was unable to testify that he was on the Jones' property or saw it on the date of the taking that the trial court erred in not striking out all of his testimony.

We overrule both of these points. It was not essential that this witness view the land in question on the day of the taking in order to make him qualified to testify as to its value as of that date.

■ The witness made it clear that the opinions he had given as to value of the property were applicable as of July 18, 1969, as well as September, 1969, a time that he knew he was on the property.

The evidence showed that this witness had been a real estate dealer for 10 years; he had lived in Wichita Falls during the last 11 years; he held a B.A. degree from the University of Texas at El Paso; he had appraised 3 houses in the locality of the house in question during the last 2 months; he had been an appraiser for the last 5 years and belongs to several appraisal organizations, and there would have been no difference in value on July 18, 1969 and Sepember, 1969.

Under these circumstances the trial court did not err in overruling the general type objection made by the attorney for the City to all the testimony that had been given by this witness prior to the time the objection was made.

During the trial while the value witness, Healy, was being examined by the condemnee's attorney the proceedings set out next below occurred.

"BY MR. PARISH:

"Q. Mr. Healy, you say in your opinion this house being located with the bedrooms 52 feet from a four lane Expressway would decrease the value of it. Now, do you have any actual experience that you based that opinion on?

"A. Well, primarily my experience in selling houses. It becomes increasingly difficult to sell a house near a busy street. I have one house for sale now that I have had for several months that is somewhat like this. It backs up to Southwest Parkway, and I have so far not been able to sell the house and that is the main objection to it.

"BY MR. HUGHES: Your Honor, I object to this line of questioning itself. This Parkway is too far and too remote from the property which the City is condemning.

"THE COURT: Overrule the objection.

"BY MR. PARISH: What is the main objection you have to the house in the Sikes Addition near Southwest Parkway?

"A. Well, it is the traffic going by and the light from the overhead street lights.

"Q. People object to the house for that reason?

"A. Yes, sir, they do object to a house being that close to a busy thoroughfare."

In the City's point 17 contention is made that the trial court erred in overruling the City's objection made by Mr. Hughes that is reflected by these proceedings just mentioned. The grounds of the objection urged in the trial court were that the lot the witness was talking about backing up to Southwest Parkway was too far and too remote from the property being condemned in this case. The trial judge correctly overruled this objection because there was no proof whatever made during the trial as to the distance between the two lots. Neither the trial court nor this court can take judicial notice of the distance that separates two houses that are located on lots on different streets within the same city. The members of this Court have no idea as to the distance between those two houses.

The only objection urged in the trial court during the trial by the City to this evidence was the one set out above. In the City's brief on this appeal it urges additional and different grounds as to why it says this testimony complained of under point 17 was erroneously admitted by the trial court. The City's new grounds of objection urged on this appeal that were not urged during the trial are that the evidence was not admissible because noise and annoyance from traffic on the highway being built cannot form the basis for damages in a condemnation case because such injuries are common to the community generally.

■ The rule is well established that objections to evidence that are different from those urged in the trial court will not be considered on appeal. For a large number of cases holding this to be the law see 3 Tex.Dig., Appeal and Error, ☞232(2), page 386. We therefore overrule the City's point 17.

In its points 20, 21, 22 and 23 the City complains of jury argument made by condemnee's attorney during the trial.

■ The argument complained of, the City's objection to it, and the court's ruling are set out next below.

"* * * You know the thing that struck me as rather peculiar in this case, that if you take Mr. D'Vorken's testimony of $64,700.00 and add the value of the portion that was taken of $300.00, you come up with $65,000.00. If you take Mr. Combs' testimony of $64,706.00 and add the $294.00 to you, you come up with $65,000.00. Now $65,000.00 is 6,500,000 pennies, and isn't it peculiar that these two men would form an individual opinion and hit on the exact penny on 6,500,000 pennies? It looks to me like there may have been some collusion on their testimony. Is that the kind of testimony that this Jury is going to say is credible testimony? * * *

"* * * I don't know whether you caught it or not, but this is why I say I'm telling you without any apology that in this case it clearly shows a conspiracy on the part of D'Vorken and on the part of Combs to close their eyes to justice and try to save the City money, because when I asked Mr. D'Vorken about this $64,700.00 figure being so close to a $64,706.00 figure that Combs figured, did you catch his answer? Did you catch his answer? 'Well, we figured that' 'We figured that.' And we have no collusion, if you please, of a conspiracy on the part of these two witnesses, and Mr. Hughes surprised me 'to save money.'

"BY MR. HUGHES: Now, your Honor, I object to that. There is no evidence of a conspiracy in here, that he is merely bringing this out to inflame and prejudice the minds of this Jury.

"THE COURT: Overrule the objection.

"BY MR. PARISH: You heard his testimony. Mr. D'Vorken 'We figured that.'

Now, I don't know who the 'We' would be if it wasn't the parties that I have named."

The two witnesses, Combs and D'Vorken, were value witnesses for the City. Combs testified that his opinion as to value of the part of the lot the City took title to was $294.00; his opinion as to the value of the remainder, not considering the part taken, just before the taking, was $64,706.00; and that his opinion as to the value of this remainder just after the taking was the same figure, or $64,706.00.

The witness, D'Vorken, testified that his opinion of the value of the part taken by the City was $300.00; his opinion as to the value of the remainder just before the taking was $64,700.00; and his opinion of value of the remainder just after the taking was $63,400.00. This witness had served as a commissioner in the case.

The witness, Combs, had earned $17,000 in 1968 and 1969 by doing evaluation work for the City.

The witness, D'Vorken, was cross-examined by condemnee's attorney as to just how it could happen that he and the City's other value witness, Combs, could view the property in question, worth many thousands of dollars, and come out with almost identical opinions as to dollar values.

While D'Vorken was being so cross-examined the following questions were asked and answers given:

"Q. You told us that the replacement cost of these various elements—I mean of the various things, was one element to take into consideration in arriving at the value. Now, my question to you: If you don't know what the replacement cost was, how did you arrive at the value of $300.00? The exact penny that Mr. Combs arrived at?

"A. Was it the exact. I thought it was $6.00 difference.

"Q. No, you made that $6.00 difference on a $64,700.00 figure, but you hit it on the penny on the $300.00 figure.

"A. Well, Mr. Combs, if you remember, was the witness, and we possibly agreed that his figure was correct, that it was $300.00. He had presented testimony to that effect."

On one occasion D'Vorken testified as follows: "Well, we had to make a value judgment as to what this $300.00—this little triangular piece of property was worth as severed from the larger piece of property, and we decided that $300.00 was a fair and equitable price for the severed parcel."

Mr. Hughes, attorney for the City, had argued as follows to the jury: "Now, my job is to try to save the City money. We go out and we hire experts."

We overrule the City's points 20, 21, 22 and 23 complaining of this argument made by condemnee's attorney. Counsel for the parties can properly argue matters that can be reasonably inferred or deducted from evidence proved during the trial of the case. We believe that this argument falls in that category.

The City contends in its 24th point that the trial court erred in sustaining condemnee's objection to jury argument made by the attorney representing the City.

The argument, the objection of condemnee's attorney and the court's ruling are set out next below.

"* * * I think that is just compensation for the part of the property that the City is taking. I think you all know that this comes out of the treasury of the City.

"BY MR. PARISH: Now, your Honor, we want to object to that.

"THE COURT: Sustain the objection."

The trial judge correctly sustained the objection to this argument. Arguments such as this have been condemned by the

courts and held objectionable on the following grounds: (1) It is a direct appeal to the self-interest and prejudice of the jury, and (2) it is an attempt to get the jury to align itself as a party in the case on the side of the City and to hold the award down because in the end whatever judgment is rendered the jurors themselves will have to help pay with their tax money.

See West v. State, 150 S.W.2d 363 (Eastland Tex.Civ.App., 1941, no writ hist.). City's point 24 is overruled.

We affirm the trial court's judgment.