**Ronald Earl ROTH et al., Appellants,**

v.

**Janet M. LAW et al., Appellees.**

No. 1326.

Court of Civil Appeals of Texas, Corpus Christi.

March 30, 1979.

Supplemental Opinion on Remittitur April 5, 1979.

Rehearing Denied April 26, 1979.

Charles R. Dunn, James Wyckoff, Wyckoff, Russell, Dunn & Frazier, Houston, for appellants.

K. Michael Mayes, G. P. Hardy, III, Harvill & Hardy, Houston, for appellees.

## OPINION

YOUNG, Justice.

In this motor vehicle accident case, appellee, Janet M. Law, individually and as next friend of Lea Rae Law, a minor, sued Ronald Earl Roth, Lilly Ice Cream Company, and Lilly Dairy Products for injuries received when the Law vehicle and a Lilly truck driven by Roth collided. Trial was to a jury which found Roth and Lilly Ice Cream Company liable for resulting injuries to Mrs. Law's back and Lea's left eye. Judgment of $7,655.00 in favor of Mrs. Law and of $193,760.00 in favor of the minor child was entered on the verdict. Roth and Lilly Ice Cream Company bring this appeal.

A fair summary of the record indicates the following events. On January 29, 1976, appellee and her daughter Lea were travelling westbound on a two-lane highway near Bay City, Texas on a dry clear day. As Mrs. Law was approaching the intersection of the highway with Hasama Road, where she intended to turn left, Roth, driving a Lilly truck behind Mrs. Law, pulled into the left lane to pass the Law vehicle. Mrs. Law apparently signaled her left turn, began slowing down and started to turn left when the Lilly truck and the Law vehicle collided in the east bound lane of the highway at the intersection with Hasama Road.

Mrs. Law sustained injuries to her back and Lea, who had been riding in the back seat of the Law automobile, apparently was thrown around in the back seat, striking the door, seat and floor. Lea, however, showed no visible signs of injury after the accident. She did though, complain about a headache and told her mother that her eye hit the door. Thereafter, in March and April of 1976, Lea's left eye began crossing. Mrs. Law did nothing about it, though, thinking Lea merely needed glasses.

Subsequently, in June of 1976, Lea was struck by an automobile and received a minor skull fracture. During Lea's examination after this accident an ophthalmologist discovered that Lea's left eye was suffering a detached retina. The child was then referred to Dr. Alice McPherson, a retinal specialist. Dr. McPherson determined that the retinal detachment most probably was caused by trauma and that it

was of long standing, i. e., was not caused by the recent June accident but had occurred at least three months prior to the time she saw Lea in June of 1976. Dr. McPherson performed three operations upon Lea in an attempt to reattach the retina to the wall of her eye but was unsuccessful. As a result, Lea became permanently blind in her left eye.

■ Appellants bring thirty points of error. Appellants' points 1 and 2 contend that the trial court erred in allowing Doctor Smith, an ophthalmologist, to testify concerning the retinal detachment because two of his opinions were based solely upon opinions of other physicians as found in the hospital records and the records of Dr. McPherson. We disagree. The evidence shows that Dr. Smith examined Lea on one occasion only, that being a "little over a month" before the case went to trial on August 15, 1977. This examination was routine and because an advanced cataract clouded the minor's eye, Dr. Smith was unable to personally examine the retina in question although the doctor did observe the total absence of sensitivity to light in the left eye, and that her left eye was crossing. As a consequence, Dr. Smith's testimony as to the causation and timing of the retinal detachment was totally reliant on the minor's hospital records, the optical sketches drawn by Dr. McPherson or her staff and the child's history as related in the hospital records and by the child's mother.

At trial, Dr. Smith was asked to give opinions on two separate questions. The first question asked if the June 1976 accident caused the retinal detachment. Appellants objected to this question on the sole ground that it was based upon other physicians' opinions. The objection was overruled and appellants were given a running objection to any of Dr. Smith's opinions based upon opinions of other doctors. Dr. Smith then answered that in his opinion the June 1976 accident did not cause the detached retina. The second question asked if

the January 1976 accident (made the basis of this suit) caused the retinal detachment. He answered that it probably did.

We hold that appellants' complaint that Dr. Smith's opinions were based on the opinions of other physicians to be unjustified. About the first opinion concerning the June 1976 accident, Dr. Smith stated that this opinion could be totally based upon the retinal drawings. Regarding the second opinion, we find an absence of any indication that Dr. Smith relied on other medical opinions; indeed, Dr. Smith himself stated that the retinal drawings were the very heart of the medical records, all of which were admitted into evidence.

In response, appellants contend that the retinal drawings are merely medical opinions of the condition of Lea's retina. We disagree and hold that the retinal drawings Dr. Smith reviewed were not opinions but were objective findings made by Dr. McPherson or her staff. Dr. Smith testified that the making of retinal drawings follows a standardized procedure such that any ophthalmologist could interpret the drawing even if he or she could not see the retina. In general, such drawings are hand sketched reproductions of what the doctor views when looking into the patient's dilated eye. Further, according to Dr. Smith, the drawings are usually very accurate because they are made in preparation for surgery so that the surgeon will know where to work on the eye. In addition, they are prepared for future reference by the treating doctor and for reference by other doctors who might need to become involved with the patient. Dr. Smith did state, however, that some ophthalmologists would be better skilled than others in making retinal drawings but that essentially ophthalmologists, as a group, would give the same rendition of a certain ocular condition. It should be further noted that Dr. McPherson worked exclusively with retinas and that she and her staff were extremely well practiced in making accurate retinal drawings. Moreover, Dr. Smith was experienced in

interpreting Dr. McPherson's drawings in that she was his medical school professor and taught him the technique of retinal drawing. Dr. Smith also stated that two equally trained ophthalmologists interpreting a retinal sketch would probably come up with about the same interpretation.

At trial, Dr. Smith explained to the jury the observations which he gleaned from the drawings. He explained that the pictures showed extensive scarrings, extensive gliosis (dried blood caked on the retina), cyst formation impigmentation (suggesting trauma) and blood vessels growing into the gliosis (suggesting that the damage had been present for some time). In addition, he stated that the retina appeared fixed and folded (also suggesting that the damage had occurred quite some time in the past). We think Dr. Smith's opinion was based upon fact rather than opinion.

Under points 1 and 2 appellants also complain that Dr. Smith's opinion, concerning the January 1976 accident, was not admissible because according to Dr. Smith's own admission his opinion was based primarily upon the history that the mother had given him. Appellants cite *Goodrich v. Tinker*, 437 S.W.2d 882 (Tex.Civ.App.—El Paso 1969, writ ref'd n.r.e.) for the proposition that a testifying doctor may not base his opinion, in part, upon the interested testimony of a party. This objection to the admissibility of Dr. Smith's testimony was not, however, raised at trial and may not be raised now on appeal. *Kettle v. Smircich*, 415 S.W.2d 935 (Tex.Civ.App.—Corpus Christi 1967, no writ); see also *City of Wichita Falls v. Jones*, 456 S.W.2d 148, 154 (Tex.Civ.App.—Fort Worth 1970, no writ). Furthermore, even if the objection had been raised at trial, the case of *Slaughter v. Abilene State School*, 561 S.W.2d 789, 791 (Tex.Sup.1977), makes it clear that a medical opinion is not rendered inadmissible because a testifying doctor bases his opinion, in part, upon an interested party's case history. Appellants' points 1 and 2 are overruled.

Appellants' points 3 and 4 contend that the court erred in allowing Dr. Smith to answer a hypothetical question concerning the causal relation between the January 29, 1976, accident and the retinal detachment because the hypothetical assumed that no other trauma had occurred to the child's eye prior to January 29, 1976.

It is within the province of counsel to assume, within the limits of the evidence, a state of facts which he contends the evidence justifies and which enables the witnesses to form an intelligent answer from the facts assumed. *Pan American Fire & Casualty Company v. Reed*, 436 S.W.2d 561 (Tex.Civ.App.—Amarillo 1968, writ ref'd n.r.e.). Hypothetical questions should, though, be restricted to the facts in evidence or to be put in evidence in order to prevent misleading or confusing the jury. *J. Weingarten, Inc. v. Tripplet*, 530 S.W.2d 653 (Tex.Civ.App.—Beaumont 1975, writ ref'd n.r.e.). In the hypothetical, about which appellants complain, appellees' counsel asked Dr. Smith to assume his earlier mentioned physical findings based upon the retinal drawings and to assume further "that the only other trauma involving the eye that the little girl had been involved in had to do with an automobile-truck wreck that took place on January 29, 1976." Given this, Dr. Smith was asked whether it was consistent with his observations for the detachment to have occurred in the January accident. Dr. Smith never answered this particular hypothetical, though, because of subsequent objections. Instead, Dr. Smith was then asked to assume the same physical findings from the drawings and "that there was no trauma that anybody knows about nor was there any complaint or problem with the left eye before an automobile-truck wreck that occurred on January 29, 1976." Dr. Smith responded that, based upon these assumptions, it was his opinion that the January 29, 1976 accident was causally related to the injury within reasonable medical probability. Appellants' contention, therefore, is misstated. Even so,

we will treat appellants' argument as if Dr. Smith had answered the first of the above two hypotheticals in the affirmative.

Lea's natural parents released possession of her for adoption in January of 1974. Mrs. Law has had exclusive custody of Lea since that time. Mrs. Law testified that she had no idea as to what happened to Lea physically prior to January 1974. She stated, however, that Lea had no eye problems when they received her in January of 1974. She also testified that Lea had had no visible injury to her head or eyes and made no complaints about them between January 1974 and January 1976. Dr. Smith dated the trauma causing the retinal detachment to have occurred on January 29, 1976, and Dr. McPherson at one point said that the trauma causing the retinal detachment was probably one and a half to two years old, or possibly as long as three to five years old, at the time she examined Lea in June 1976. Consequently, Lea was in Mrs. Law's exclusive control during the times each doctor estimated that the trauma causing the detachment most probably occurred. To be sure, this testimony does not show the absence of any trauma from the time of birth. The trauma could have occurred while the child was in the possession of her natural parents. The evidence does, though, fairly show the absence of any trauma other than the auto accident during the period of time both ophthalmologists stated the child most probably sustained the trauma which caused the retinal detachment. We hold, therefore, that the hypothetical appellees' counsel propounded to Dr. Smith was justified by the evidence herein.

Appellants also complain that the previous hypothetical did not accurately reflect the facts in the case because Dr. McPherson mentioned the possibility of child abuse as the prior trauma causing the retinal detachment herein. While it is true that child abuse was mentioned by Dr. McPherson as a possible prior trauma and cause, a hypothetical question may assume facts which the evidence fairly tends to prove, although they may not have been clearly established. *Wheatheart Feeders, Inc. v. Pletcher*, 453 S.W.2d 902, 905 (Tex.Civ.App.—Amarillo 1970, writ dism'd). In this connection, it was Dr. Smith's testimony that child abuse was the cause of retinal detachment in less than one percent of all cases. Thus, in the end, we think the evidence fairly tended to prove, though it did not clearly establish, the absence of a trauma prior to the January 29, 1976 accident. Accordingly, appellants' points 3 and 4 are overruled.

■ Appellants' points 5 and 6 complain of an improper instruction to the jury. We need not consider this point, however, because the record reflects that the appellants did not object to this instruction prior to its submission to the jury. Accordingly, the objection is waived. Rule 272, T.R.C.P.; *Missouri Pacific Railroad Company v. Cross*, 501 S.W.2d 868 (Tex.Sup.1973). Appellants' points 5 and 6 are overruled.

■ Appellants' point 7 contends that the trial court erred in failing to grant appellants' motion for new trial on the basis of newly discovered evidence. We need not consider this point, though, in that appellants' motion, which was accompanied with two affidavits explaining the newly discovered evidence, was not presented to the trial court and no hearing was held on the motion. *Fergus v. Fergus*, 547 S.W.2d 51 (Tex.Civ.App.—Eastland 1977, no writ). Appellants waived any relief they sought based upon newly discovered evidence by failing to request a hearing. Compare *Innes v. Greiner*, 449 S.W.2d 83 (Tex.Civ. App.—Amarillo 1969, no writ); *Senn v. Strange*, 366 S.W.2d 612 (Tex.Civ.App.— Amarillo 1963, no writ).

Appellant contends, on the other hand, that *Moore v. Maudlin*, 428 S.W.2d 808 (Tex.Sup.1968), holds that a motion for new trial based upon newly discovered evidence need not be presented in order for the point to be preserved for appeal. We disagree. The motion for new trial considered in *Moore* did not deal with new trial points

which necessitated the introduction of further proof and the determination of certain fact issues not dealt with in the main cause. Thus, we find that *Moore* does not control here. Appellants' point 7 is overruled.

Appellants' points 8, 9 and 10 assert that there is no evidence to support the jury's award of $20,000 for future medical expenses, that the $20,000 award was excessive, that the court should have granted a request to reduce the recovery for future medical expenses by fifty percent because of the mother's negligence and that the jury's answers to all the damage issues are so excessive as to show bias and prejudice.

▪▪▪ Concerning future medical expenses, Dr. Smith testified that a "conservative figure would be $10,000 in future medical." He gave no other estimate of future medical expenses. Dr. McPherson stated later in the trial that Lea would need more periodic examinations, and that she had Lea set up for an appointment for six months and a year, but no figures were given for the cost of a visit and how regular the visits should be for the remainder of Lea's life. In response to this evidence, the jury awarded $20,000 future medical. We agree with the appellants that this amount is not justified by the evidence. The plaintiff has not shown a reasonable probability that such amount of expenses will be necessary in the future. *Powell v. Underbrink*, 499 S.W.2d 206, 211 (Tex.Civ.App.—San Antonio 1973, no writ). Dr. Smith's estimate was tantamount to stating that the future medical will be $10,000 and possibly more, but how much more is not known. No recovery can be allowed based upon pure speculation. Compare *Union Oil Co. of California v. Richard*, 536 S.W.2d 955 (Tex.Civ.App.—Beaumont 1975, no writ). The judgment is excessive by $10,000. Appellants' point 9 is sustained to this extent.

About the contention that appellants are entitled to a fifty percent reduction in future medical expenses because Mrs. Law was found to be fifty percent negligent by the jury, we disagree.

▪▪▪ It is well settled law that because the parent is primarily liable for a minor's medical expenses incurred during minority any cause of action for medical expenses incurred up to the age of 18 belongs to such parent. *Lowery v. Berry*, 153 Tex. 411, 269 S.W.2d 795 (1954); *Walsh v. Hurshey*, 472 S.W.2d 954 (Tex.Civ.App.—Fort Worth 1971, writ ref'd n.r.e.). In this connection, in a suit like the one before us the plaintiff child (age 6 years) and mother have the burden to request submission of the future medical issue in two separate parts; i. e., 1) future medical for Lea between the time of trial and the time she becomes 18, and 2) the future medical expense for her after she becomes 18. But in this case only one issue as to future medical expenses was submitted, and the issue made no provision for allocating the expenses to the two different time periods. The evidence does not establish as a matter of law when Lea will incur her future medical expenses. Thus, the most that can be said is that the evidence creates a jury issue. After the verdict, appellants requested that the future medical be reduced by the fifty percent negligence of Mrs. Law, thereby assuming that the evidence showed that all of the future medical would be incurred prior to Lea's reaching the age of 18. No written findings on such omitted issues were requested, though. Thus, we must deem the issues were found by the court in such manner as to support the judgment. Rule 279, T.R.C.P. The court did not reduce the future medical expenses by fifty percent so we must assume the court found that they will be incurred after Lea Law becomes 18. Therefore, appellants' contention as to the fifty percent reduction is overruled.

▪▪▪ Next, appellants contend that all the jury answers can be deemed excessive because the jury's answer to the future medical issue was excessive. We cannot draw this conclusion based upon one excessive jury award. In determining whether a verdict is excessive, the court must review

only the evidence favorable to the verdict and the jury's determination will not be disturbed as excessive where there is any evidence to sustain it. Thus all the evidence must be considered and not just one award. See *Southern Pac. Transp. Co. v. Peralez*, 546 S.W.2d 88 (Tex.Civ.App.—Corpus Christi 1976, writ ref'd n.r.e.). In looking at all the evidence we find the awards are not so excessive as to show bias and prejudice. Appellants' points 8 and 10 are overruled.

Appellants' point 11 contends that the trial court erred in excluding defendants' exhibits 3, 4, 5, 6 and 7 which documents would have impeached Mrs. Law's veracity and would have tended to establish that Lea was a neglected and abused child. Exhibits 3, 4, 5, 6 and 7 were the pleadings in a suit brought in March of 1977 by Lea's natural mother to regain custody of Lea.

The evidence indicates that at a deposition prior to the trial herein, Mrs. Law denied that anyone had ever brought a lawsuit against her other than for divorce. In contradiction to this answer, at trial the defendants sought to introduce the above exhibits. The trial court refused to admit the pleadings in the prior suit. We find no error in this action in that the issue of rightful custody is irrelevant to the issues herein. Appellants' efforts constituted attempted impeachment on collateral issues. 1 McCormick & Ray, Texas Evidence § 690 (2d ed. 1956). Furthermore, any possible error was harmless in that Mrs. Law admitted at trial her prior untruth concerning the natural mother's attempted custody suit. Rule 434, T.R.C.P.

Appellants also contend the pleadings should have been admitted to show child abuse. They point to the language of a temporary restraining order directing Mrs. Law to refrain from "molesting or disturbing the child." This was a statement made by a court in an unrelated matter involving different parties, different facts and different subject matter. It was not admissible to prove child abuse and was merely hearsay. See *Colonial Life & Acc. Ins. Co. v. Squyres*, 550 S.W.2d 413 (Tex.Civ.App.—Corpus Christi 1977, writ ref'd n.r.e.). Appellants' point 11 is overruled.

Appellants' point 12 sets out that the court erred in admitting the deposition testimony of Mrs. Law stated in response to questions concerning Lea's remarks shortly following the January 29, 1976 accident. The testimony complained of is as follows:

"Q  What injuries was your daughter complaining of?

A  Her head and her eye.

Q  Did she complain of her eye right away.

A  No. She stated—at that time she told me she hit her head, her head hit the window, and she had a slight headache, *and she hit her eye on the door*, but—

Q  Was she complaining of her eye at that time?

A  No, just—not at that time.

Q  What was she complaining of right after the accident, to you?

A  That she had a small headache.

Q  Anything else?

A  No." (Emphasis supplied).

The above colloquy shows that while Lea did not complain about her eye after the accident that she did tell her mother that she hit her eye on the door. This declaration is admissible under the res gestae exception in connection with the proven fact that Lea was in the back of the Law auto at the time of the accident and was forcefully thrown about in the rear of the car. See *Hartford Accident and Indemnity Company v. Hale*, 400 S.W.2d 310 (Tex. Sup.1966). Appellants also complain that the statements were self-serving and not admissible. The question of admissibility is one for the discretion of the trial judge, and his decision will not be reversed except upon a showing of abuse of that discretion. *Gilmer v. Griffin*, 265 S.W.2d 252 (Tex.Civ.

App.—San Antonio 1954, writ ref'd n.r.e.). While a trial court should exercise caution in admitting such statements, we find no abuse of discretion in admitting the above testimony. Appellants' point 12 is overruled.

■ Appellants' point 13 submits that the trial court erred in admitting the testimony of Trooper Taylor, the officer who investigated the January 29, 1976, accident. Appellants complain that Trooper Taylor was allowed to state his conclusion that because Mrs. Law's turn indicator was pushed down that she was signaling a left turn prior to the accident.

Appellants' reason for this complaint is that Trooper Taylor was never qualified as an accident reconstruction expert and thus could not give an expert opinion on whether Mrs. Law's left turn signal had been actuated prior to the accident. We find no harmful error. Trooper Taylor did not attempt to give his opinion as to the cause of the accident based upon the physical evidence at the scene. Compare *Clark v. Cotten*, 573 S.W.2d 886 (Tex.Civ.App.—Beaumont 1978, no writ). He merely stated that he believed that Mrs. Law was giving a signal based upon the position in which he found the turn signal indicator after the accident. Furthermore, Trooper Taylor's testimony was cumulative of other testimony which showed that Mrs. Law indicated a left turn. Mrs. Law testified that she indicated a left turn prior to the accident. Appellants' point 13 is overruled.

■ Appellants maintain in their point 14 that the trial court erred in rendering judgment against Lilly Ice Cream Company for any amount because there is neither pleading nor proof upon which to base such judgment. We need not consider the merits of this contention in that appellant Lilly Ice Cream Company failed to receive a trial court determination as to the absence of pleading and proof to support the judgment. These questions cannot be raised for the first time on appeal. *Westinghouse*

*Credit Corporation v. Kownslar*, 496 S.W.2d 531 (Tex.Sup.1973); *Fulcher v. Texas State Bd. of Public Acc.*, 571 S.W.2d 366, 368 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.). Appellants' point 14 is overruled.

■ Appellants generally argue under their points 15 through 30 that the trial court improperly allowed the testifying economist, John Wilson, to answer hypotheticals based upon facts not in evidence. We disagree. Appellants complain that the hypotheticals used to estimate Lea's loss of future earning capacity assumed facts not in evidence; i. e., that she would have a "glass eye", "an eye that is fixed as opposed to the other eye" and "something that is noticable to the public that could be seen from a distance of fifteen feet." We hold the evidence does tend to prove these facts.

Appellant further complains that Mr. Wilson's "guesstimate" that Lea's earning capacity would be reduced by between twenty-five percent and fifty percent was merely conjecture and thus not admissible.

■ Damages for loss of future earning capacity is always uncertain and they must be proved with the degree of certainty of which they are susceptible. *McIver v. Gloria*, 140 Tex. 566, 169 S.W.2d 710, 712 (1943). Where the plaintiff is a child, as in the case before us, who has never earned any money, nor shown any particular abilities or aptitudes, the jury must determine the value of the child's lost earning capacity based upon their common knowledge and their sense of justice. *English v. Hegi*, 337 S.W.2d 860 (Tex.Civ.App.—Amarillo 1960, no writ). As a result, any expert's opinion as to loss of earning capacity for a six year old child will be a rough estimate at best, and probably an educated guess. In the instant case, Mr. Wilson manifested the inherent uncertainty involved in estimating the loss of future earning capacity of Lea by explaining to the jury that his answer was a "guesstimate." In explaining why his statements were a "guesstimate",

Mr. Wilson said that the types of jobs available in 1989, when Lea would be entering the work force, could be so drastically changed that it would be very difficult to estimate what her loss of capacity to work would be. He then stated that her capacity to work and gain promotions could be reduced by twenty-five to fifty percent.

■ Under these circumstances we hold that the court did not err in admitting the testimony of Mr. Wilson and that the word "guesstimate" before his opinion went to the weight of his testimony rather than to its admissibility. In addition, any possible error in admitting his testimony was diminished by the jury's conservative award of $30,000 for loss of future earning capacity. This amount represented less than 7.5 percent loss of future earning capacity based upon projected minimum wage levels. Thus, it is quite probable that the jury disregarded Mr. Wilson's opinion, and based their answers on their own common knowledge and sense of justice. Thus, any error was harmless. Rule 434, T.R.C.P. Appellants also complain of a comment by the court acknowledging that Mr. Wilson was an expert witness. We find no harmful error in this in that at the time the judge was explaining Mr. Wilson's function to the jury and then instructing Mr. Wilson to be as clear as possible in making estimates of loss of future earning capacity. The above contentions about Mr. Wilson are overruled.

■ Appellants' points 15 through 30 also complain that the jury's answers to issue 1(a), finding improper lookout by defendant Roth and proximate cause; issue 3, apportioning fifty percent of the negligence to Mrs. Law and fifty percent of the negligence to Mr. Roth; issue 4, finding various damages for Mrs. Law's injuries; and issue 5, finding various damages for Lea, are supported by "no evidence", "insufficient evidence" and that the answers are "against the great weight and preponderance of the evidence." After thoroughly reviewing the record we hold the evidence both legally and factually sufficient to support the judgment. Appellants' points 15 through 30 are overruled.

■ We find no merit in appellees' crosspoint asserting appellants' appeal was brought solely for delay. It is overruled.

In accordance with our sustaining of appellants' point 9 about the excessiveness of the future medical expenses relative to the minor child, we order that a remittitur of $10,000.00 be filed in this Court by the appellees within ten days from the announcement of this decision, whereupon this Court will reform the judgment of the trial court by the amount of the remittitur; otherwise, the judgment of the trial court will be reversed and the cause remanded for a new trial.

The judgment of the trial court is affirmed on condition of remittitur.

## SUPPLEMENTAL OPINION ON THE FILING OF REMITTITUR

This Court has suggested that appellees remit the sum of $10,000.00 as set forth in the original opinion. The appellees, through their attorneys have filed a remittitur in the amount suggested by this Court.

Therefore, in accordance with the opinion of this Court heretofore announced, the judgment of the trial court is reformed to the extent of the amount hereby remitted by the appellees so that the amount of judgment against the appellants is reduced to the sum of $191,415.00.

The judgment of the trial court as herein reformed is hereby affirmed.