Dewey WEAVER, Sr., et al, Appellants,

v.

Charlie JOCK, Appellee.

No. 10–85–220–CV.

Court of Appeals of Texas,
Waco.

July 24, 1986.

Rehearing Denied Sept. 4, 1986.

J. Robert Sheehy, L. Hayes Fuller, III, Lisa H. Douglas, Sheehy, Lovelace & Mayfield, P.C., Waco, on appeal only, for appellants.

John H. Jackson, Powell, for appellee.

## OPINION

THOMAS, Justice.

Charlie Jock, a subcontractor on the construction of a motel, originally sued Dewey Weaver, Dewey Weaver, Jr., and Triple D Investments, Ltd., who owned the motel, and Norris Nations, the general contractor of the motel. Jock alleged that the Weavers and Nations had refused to pay him $112,314.51 for the services, labor and materials that he had expended and used in the motel's construction.[1] He also asked the court to foreclose his statutory lien and to sell the motel to satisfy the lien.

The Weavers and Nations filed cross-actions against each other in which they sought, among other relief, indemnity from Jock's claim. However, the court severed Jock's suit against the Weavers and Na-

tions from their cross-actions. On the day before the trial, Jock filed a motion for a non-suit against Nations on the ground that Nations had reportedly filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code. The Weavers argued in a plea in abatement that the court could not grant the non-suit because all legal proceedings against Nations had been automatically stayed by the filing of his bankruptcy petition. However, the court denied the plea in abatement and also refused to grant the Weavers a continuance. They had sought a continuance by alleging in their motion that Nations was a necessary party to Jock's suit against them, that his testimony was material to their defense against Jock's suit and that requiring them to try the case while Nations was absent from the state would prejudice their rights.

Following a trial without a jury, the court awarded Jock a $66,322.86 judgment against the Weavers, foreclosed Jock's statutory lien and ordered the motel sold to satisfy the lien. The Weavers complain on appeal that the court erred when it granted the non-suit against Nations, denied them a continuance because of Nations' absence as a material witness and severed Jock's primary suit from their cross-action against Nations. They also contend that the evidence was legally and factually insufficient to support a finding by the court that they were indebted to Jock for $66,322.86 or that Jock had duly perfected his statutory lien against the motel. We affirm.

The Weavers make two principal contentions under their first point of error in which they attack Jock's non-suit against Nations. First, they argue that the non-suit violated the provision of the Bankruptcy Code which automatically stayed all legal proceedings that were pending against Nations when he filed his bankruptcy petition. As a part of this contention, they allege that they were also protected by the automatic stay because Jock's suit against them was "inextricably entwined" with his claim against Nations. Second, they contend that the court could

---

1. References to the Weavers shall also include Triple D Investments.

not grant the non-suit, even if it was not prohibited by the automatic stay, because it prejudiced their rights. They assert that they were prejudiced by the non-suit because Nations, as a general contractor, was a necessary party to the suit by Jock, a subcontractor, to foreclose a statutory lien.

■ At the time of the trial, Rule 164 provided that a plaintiff could, at any time before he rested his case, take a non-suit as long as it did not "prejudice the right of an adverse party to be heard on his claim for affirmative relief." Tex.R.Civ.P. 164. Unless the defendant had filed a claim for affirmative relief, a plaintiff had an absolute right to a non-suit. *Johnson v. Harless*, 651 S.W.2d 259, 260 (Tex.1983); *Greenberg v. Brookshire*, 640 S.W.2d 870, 871 (Tex.1982). To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it. *Newman Oil Co. v. Alkek*, 614 S.W.2d 653, 655 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.). If the defendant is doing nothing more than resisting the plaintiff's recovery, then the right to a non-suit is absolute. *Id.*

■ When Jock filed his motion for a non-suit, Nations had alleged in an answer that Jock's work "did not meet the reasonable standards of a contractor in [his] area of specialty" and that his charges for such work "were not reasonable but instead were excessive." Nations' pleading did not constitute a claim for affirmative relief because he was doing nothing more than resisting Jock's recovery. Therefore, Jock had an absolute right to a non-suit. *See Johnson*, 651 S.W.2d at 260; *Greenberg*, 640 S.W.2d at 871.

■ Although Jock had an absolute right to take a non-suit against Nations, the Weavers argue that the court could not dismiss him from the proceeding because he was a necessary party in Jock's suit against them. They rely on *Judd v. Wyche*, 80 S.W.2d 808, 810 (Tex.Civ.App.—Amarillo 1935, no writ), in which the court held that, "under the mechanic's lien laws", the contractor was a necessary party in a suit by a subcontractor to enforce a mechanic's lien. However, the holding in *Judd* is not controlling because, when Jock moved for a non-suit, the statutes governing the foreclosure of a mechanic's lien did not require the contractor to be a party to a suit by a subcontractor against the owner to foreclose a lien. *See* Tex.Prop.Code Ann. §§ 53.001–53.240 (Vernon 1984). Therefore, Nations' joinder was not required by the mechanic's lien laws or by Rule 39 which required the joinder of a person needed for a "just adjudication".[2] *See* Tex.R.Civ.P. 39. Accordingly, Nations could be dismissed from the proceeding because he was not required to be a party to Jock's action against the Weavers to foreclose a statutory lien.

As a part of their contention relating to the automatic stay, the Weavers first argue that the non-suit was improperly granted because it was based on Nations' bankruptcy and the court did not have any evidence before it that Nations had actually filed for bankruptcy. This argument must be rejected for several reasons. First, as noted above, Jock was entitled to discontinue his action against Nations by a non-suit. Rule 164 did not require him to explain or state the ground or reason for his non-suit. *See* Tex.R.Civ.P. 164. Therefore, whatever reason had prompted him to discontinue his suit against Nations would have been immaterial.

---

**2.** Rule 39(a)(1) did not require Nations' joinder because Jock and the Weavers could be afforded complete relief against each other in Nations' absence. *See* Tex.R.Civ.P. 39(a)(1). Furthermore, Nations' absence did not subject the Weavers to a substantial risk of incurring a double, multiple or otherwise inconsistent obli-

gation. *See* Tex.R.Civ.P. 39(a)(2)(ii). Section 53.153(b) of the Property Code gave the Weavers the right to offset the $66,322.86 judgment against whatever amount they may have owed Nations as the general contractor. *See* Tex. Prop.Code Ann. § 53.153(b) (Vernon 1984).

■ Second, the Weavers had stated in their plea in abatement that "[h]eretofore on Friday, March 22, 1985, Norris Nations, Defendant, filed bankruptcy in Federal Bankruptcy Court in Arkansas." Assuming that the court had to have some evidence before it that Nations had actually filed for bankruptcy before it could grant the non-suit, the Weavers had judicially admitted that fact by this statement in their plea in abatement. *See Pacific Fire Ins. Co. v. Donald,* 148 Tex. 277, 224 S.W.2d 204, 208 (1949). Furthermore, assuming that the court erred when it relied on this statement in the plea in abatement, the Weavers could not lead the court into error and then complain about it on appeal. *See International Security Life Ins. Co. v. Beauchamp,* 464 S.W.2d 679, 681 (Tex.Civ. App.—Amarillo 1979, no writ). Therefore, the contention that the non-suit had been improperly granted because the evidence was legally insufficient to prove that Nations had actually filed a petition in bankruptcy is rejected.

The Weavers also contend on appeal, as they did in their plea in abatement, that Jock could not dismiss his action against Nations by a non-suit because all legal proceedings against him had been automatically stayed when he filed for bankruptcy. The heart of their contention is that they were also protected by the automatic stay because Jock's claim against them was "inextricably entwined" with his claim against Nations. They rely on *Federal Life Ins. Co. (Mut.) v. First Fin., Etc.,* 3 B.R. 375, 376–77 (Bankr.S.D.Tex.1980), in which the court held that "the automatic stay applies to judicial proceedings against a debtor in bankruptcy and its co-defendants, when ... the allegations against them arise from the same factual and legal basis."[3]

■ The first question that must be resolved is whether Jock's non-suit against Nations violated the automatic stay which resulted from the filing of a petition for bankruptcy under Chapter 11. Section 362(a) of the Bankruptcy Code provides that certain types of legal proceedings against a debtor are automatically stayed when he files a bankruptcy petition under Chapter 11. 11 U.S.C. § 362(a). The stay automatically prohibits, among other proceedings, "the commencement or continuation ... of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the [bankruptcy] case ... or to recover a claim against the debtor that arose before the commencement of the [bankruptcy] case". 11 U.S.C. § 362(a)(1). The Weavers have not cited any relevent authority, nor has any been found, which holds that a non-suit by a creditor in an action pending against the debtor violates the automatic stay. The purpose behind the automatic stay is two-fold: (1) to protect the debtor from further efforts, harassment and foreclosure actions, and (2) to protect the creditors by insuring that all creditors will be treated equally. *In re Bennett,* 29 B.R. 380, 381 (Bankr.W.D.Mich.1981). Jock's non-suit was not the type of action that was prohibited by the automatic stay because it did not frustrate the two-fold purpose behind the stay. Therefore, Jock's non-suit against Nations did not violate the automatic stay because it did not harm Nations or prejudice or benefit any of his creditors.

The second question to be resolved is whether the automatic stay extended to the Weavers. In *Wedgeworth v. Fibreboard Corp.,* 706 F.2d 541, 544 (5th Cir.1983), the Fifth Circuit Court of Appeals rejected the contention, similar to that advanced by the Weavers, that the automatic stay under section 362(a) extended to the debtor's co-defendant's in an asbestosis tort suit. The court based its holding on "the plain language of the statute" and the legislative history of section 362(a), which clearly limits the protection of the stay to the debtor

---

3. The court found in *Federal Life Ins. Co. (Mut.)* that the plaintiff's claims against the debtor and the debtor's co-defendant were "inextricably interwoven, [presented] common questions of law and fact, which [could] be resolved in one proceeding." *Federal Life Ins. Co. (Mut.),* 3 B.R. at 376.

and not to a debtor's co-defendants in pending litigation. *Id.* This holding has been followed in other circuits. *See Williford v. Armstrong World Industries, Inc.,* 715 F.2d 124, 126–27 (4th Cir.1983); *Lynch v. Johns-Manville Sales Corp.,* 710 F.2d 1194, 1196–97 (6th Cir.1983).

■ As previously noted, the statutes governing the foreclosure by a subcontractor of a mechanic's lien and Rule 39 did not require that Nations be made a party to Jock's suit against the Weavers to foreclose his lien. *See* Tex.Prop.Code Ann. §§ 53.001–53.240 (Vernon 1984); Tex.R. Civ.P. 39. Therefore, because Nations' joinder was not required, Jock's claim against the Weavers was not "inextricably entwined" with his claim against Nations. *See Williford,* 715 F.2d at 127. Under such circumstances, the holding in *Federal Life Ins. Co. (Mut.)* does not require that the protection of the automatic stay be extended to the Weavers. However, in any event, the holding in *Federal Life Ins. Co. (Mut.)* is rejected to the extent that it conflicts with the holding in *Wedgeworth.* Therefore, because the Weavers were not protected by the automatic stay which protected Nations, Jock could dismiss his action against Nations by a non-suit without violating the stay and proceed with his suit against the Weavers.

■ Finally, section 502(e)(2) of the Bankruptcy Code provides that a contingent or unliquidated claim for reimbursement or indemnity of a party that is liable with the debtor on the claim of a creditor may become "fixed" after the commencement of the bankruptcy suit. 11 U.S.C. § 502(e)(2). To the extent that such a claim has become "fixed" after the commencement of the bankruptcy case, section 502(e)(2) provides that it shall be allowed or disallowed, under other applicable subsections of section 502, as if it had been fixed before the bankruptcy petition was filed. *Id.* Thus, the plain language of section of 502(e)(2) contemplates, by reasonable deduction, that the automatic stay under section 362(a) does not prohibit the "fixing" of a contingent or unliquidated claim for in-

demnity through judicial proceedings occurring after the commencement of the bankruptcy case. Any holding to the contrary would render section 502(e)(2) meaningless.

■ Section 53.153(b) of the Property Code allowed the Weavers to deduct the $66,322.86 judgment obtained by Jock from whatever amount they still owed Nations as the general contractor or, if they had already paid him in full, to recover from Nations any amount of the judgment for which he had been originally liable to Jock. *See* Tex.Prop.Code Ann. § 53.153(b) (Vernon 1984). Therefore, Jock's claim against the Weavers was contingent and unliquidated when Nations filed the bankruptcy petition under Chapter 11, and the Weavers' claim for indemnity against Nations under section 53.153(b) was likewise contingent and unliquidated at that time. Section 502(e)(2) of the Bankruptcy Code allowed each of these claims to be "fixed" through the entry of a judgment after the bankruptcy case had commenced. The Weavers were liable along with Nations on Jock's claim; therefore, their contingent or unliquidated claim for indemnity against Nations became fixed and liquidated when Jock obtained a judgment against them. The automatic stay under section 362(a) of the Bankruptcy Code did not preclude Jock from obtaining a judgment against the Weavers, thereby maturing and liquidating his claim, which automatically matured and liquidated the Weavers' claim for indemnity against Nations under section 53.153(b) of the Property Code. Accordingly, the Weavers' first point of error is overruled.

The Weavers contend in their second point that the court erred when it refused to grant them a continuance because Nations, who they alleged to be a material witness, was absent from the State. Jock argues that the motion was properly denied because it did not comply with Rule 252. *See* Tex.R.Civ.P. 252. Specifically, he alleges that the motion was defective, among other reasons, because the Weavers had failed to allege what diligence, if any, they had used to try to obtain Nations' testimo-

ny or his attendance as a witness and had failed to state his address.

■ The granting or denial of a continuance under Rule 252 is within the court's discretion, and its decision will not be reversed on appeal except for an abuse of discretion. *Hernandez v. Heldenfels,* 374 S.W.2d 196, 202 (Tex.1963); *Garcia v. Texas Emp. Ins. Ass'n,* 622 S.W.2d 626, 630 (Tex.App.—Amarillo 1981, writ ref'd n.r.e.). A presumption arises that the court has properly exercised its discretion when the application for a continuance fails to comply with Rule 252. *Garcia,* 622 S.W.2d at 630. The Weavers, who were complaining of Nations' absence in their application for a continuance, not only failed to allege in their motion what efforts they had made to try to obtain Nations' testimony or his attendance at the trial but likewise failed to state his address. Accordingly, point two is overruled because the court is presumed to have properly exercised its discretion when it denied the motion for a continuance.

In addition to his claim for $112,314.51, Jock also alleged in his petition that he was entitled to recover from the Weavers additional damages "in excess of $1,000.00" for services, labor and equipment expended or used by him to transport sheetrock and other materials at the construction site. He alleged that he had performed those services at "the special instance and request" of the Weavers. The court found that Jock had "contracted directly" with the Weavers to move the sheetrock and other materials at the job site, but that the Weavers had not paid Jock $1,246.30 for his services. In their third and fourth points of error, the Weavers contend that the evidence was legally and factually insufficient to support such a finding.

■ Jock testified at the trial that he had an express agreement with the Weavers to transport the sheetrock and water heaters. However, Dewey Weaver, Jr., denied that he had ever asked Jock to haul the materials but had only inquired about an estimate for doing so. This conflict in the testimony created a fact issue which the court, sitting as a fact-finder, resolved in Jock's favor. Although contradicted, Jock's testimony was legally and factually sufficient evidence to support a finding by the court that Jock had "contracted directly" with the Weavers for the movement of the sheetrock and other materials.

■ The Weavers also complain under these points that the evidence was insufficient to support a recovery by Jock for transporting the materials because he had failed to prove that he and the Weavers had agreed on a price for his services. This complaint must be rejected because the parties, who had done everything necessary to make a binding agreement except to specify the price for Jock's services, did not leave the contract so incomplete that it could not be enforced. *See Bendalin v. Delgado,* 406 S.W.2d 897, 900 (Tex.1966). Under those circumstances, the law presumes that a reasonable price for the service was intended by the parties. *See id.* Accordingly, the third and fourth points of error are overruled.

The Weavers charge in their fifth and sixth points that the evidence was legally and factually insufficient to support a finding by the court that they were indebted to Jock for $66,322.86, the amount of the judgment. They first complain that Jock had failed to adequately document his charges for services, labor and materials by introducing into evidence all of the checks with which he had paid his employees, suppliers or subcontractors or to document payments that he had allegedly made in cash. They also contend that the evidence was insufficient because it was replete with "instance after instance of overcharges" and because Jock's charges for labor, equipment and materials had not all been incurred in accordance with the job's specifications.

■ The general rule is that damages only need to be proved to a reasonable certainty and not to a mathematical exactness. *Bildon Farms, Inc. v. Ward County Water Imp. Dist. No. 2,* 415 S.W.2d 890, 897 (Tex.1967). If the injured party has

produced the best evidence available and it is sufficient to afford a reasonable basis for determining his loss, then he cannot be denied a recovery merely because the exact amount of his damage cannot be readily ascertained. *Vance v. My Apartment Steakhouse, Etc.*, 677 S.W.2d 480, 484 (Tex. 1984). However, an award of damages cannot rest solely on speculation. *Roth v. Law*, 579 S.W.2d 949, 956 (Tex.Civ.App.—Corpus Christi 1979, writ ref'd n.r.e.).

■ Jock introduced into evidence three invoices, totaling $112,314.51, which he testified were based on his records of work done at the job site. Two of the invoices, dated June 8 and June 15, contained detailed, itemized charges for equipment, labor and materials purportedly used in the motel's construction. However, he explained that the charges on the third invoice, totaling $50,580.01, had not been itemized because of the "expedience of paying vendors before a notary public". Jock also stated that the Weavers had refused to pay the invoices even though the charges were true and correct. The Weavers cross-examined Jock about overcharges, errors in the invoices and the absence of documentation. He admitted that he could not support or verify all of the charges shown on the invoices by producing cancelled checks, but he insisted that the charges had been incurred and paid by him. Although Jock was subjected to a vigorous cross-examination, his testimony and the three invoices would have nevertheless supported a judgment in his favor for $122,314.51, the full amount of his claim. However, the court only awarded him a judgment for $66,322.86, which was an amount within the proof of his total damages. The evidence supporting the $66,322.86 judgment was not legally or factually insufficient just because Jock could not produce cancelled checks for each item included on the invoices or because the court found evidence of overcharges or other errors in the invoices. Finally, the evidence presented nothing more than a fact issue on whether Jock had failed to follow construction specifications, a fact issue which was resolved against the Weavers. According-

ly, the fifth and sixth points of error are overruled.

The Weavers use points seven and eight to attack the legal and factual sufficiency of the evidence supporting a finding by the court that Jock had "duly perfected his statutory lien". They argue that he had not timely perfected his lien because the lien affidavit was not filed until more than thirty days had elapsed after Nations' work on the job had been completed.

■ To perfect his lien, a subcontractor must file a lien affidavit with the county clerk "not later than the 90th day after the day on which the indebtedness accrues." Tex.Prop.Code Ann. § 53.052(c) (Vernon 1984). Indebtedness to a subcontractor, who has furnished labor or materials to an original contractor, accrues "on the 10th day of the month following the last month in which the labor was performed or the material furnished." Tex.Prop.Code Ann. § 53.053(d) (Vernon 1984). The indebtedness reflected by the three invoices presented by Jock, which covered the period from June 1 through June 21, did not accrue under section 53.053(d) until July 10. *See id.* Thus, Jock had until October 8, which was the ninetieth day after July 10, to file his lien affidavit. *See* Tex.Prop. Code Ann. § 53.052(c). Jock had timely perfected his lien because he filed the lien affidavit on July 16. Therefore, the seventh and eighth points are overruled.

After Jock filed his suit against the Weavers and Nations, the Weavers filed a cross-action against Nations in which they sought indemnity against Jock's claim. They also sought damages resulting from Nations' alleged breach of the construction contract and of an implied warranty to construct the motel in a good and workmanlike manner. However, based on Jock's motion, the court later severed this cross-action against Nations from Jock's suit against the Weavers and Nations. The Weavers contend in their ninth point that the court abused its discretion when it granted the severance. They argue that the severance was improper because the

question of Nations' performance of the construction contract, as the general contractor, was interwoven with Jock's performance of the contract as Nations' subcontractor. Thus, they assert that the severed cross-action related to the same subject matter and fact issues involved in Jock's suit against them. Under those circumstances, the Weavers contend that the severance prejudiced their right to have all of these issues decided in a single suit to avoid the expense and burden of multiple litigation.

A court has broad discretion to sever actions under Rule 41. *Cherokee Water Co. v. Forderhause*, 641 S.W.2d 522, 523 (Tex.1982); Tex.R.Civ.P. 41. Therefore, the decision to grant a severance will be reversed on appeal only for an abuse of discretion. *Womack v. Berry*, 156 Tex. 44, 291 S.W.2d 677, 682 (1956). For a severance to be proper, more than one cause of action must be involved in the controversy, the severed cause must be one that can be asserted independently, and the severed action must not be so interwoven with the remaining action that they involve identical facts and issues or, in certain instances, relate to the same subject matter. *Hayes v. Norman*, 383 S.W.2d 477, 478–79 (Tex. Civ.App.—Corpus Christi 1964, writ ref'd n.r.e.). A claim for indemnity may be asserted in an independent proceeding because it is a separate cause of action. *Union Bus Lines v. Byrd*, 142 Tex. 257, 177 S.W.2d 774, 776 (1944). Therefore, the court did not automatically abuse its discretion merely because it severed the Weavers' cross-action against Nations, in which they sought indemnity, from Jock's suit.

Issues relating to Jock's performance of the construction contract as a subcontractor were undoubtedly resolved by the court when it awarded him a $66,322.86 judgment against the Weavers. He was only entitled to recover for the unpaid indebtedness which he had incurred in performance of the construction contract. Thus, the quality of Nations' performance as a general contractor of the project could not have affected Jock's right to recover or the amount of his recovery. Therefore, issues relating to the performance of the construction contract by Nations and Jock were not so interwoven as to be inseparable. Accordingly, point nine is overruled because the court did not abuse its discretion when it severed the Weavers' cross-action against Nations for indemnity, which could be asserted in an independent action, from Jock's suit against the Weavers and Nations. *See County of Nueces v. Svajda*, 608 S.W.2d 752, 753 (Tex.Civ.App.—Corpus Christi 1980, writ ref'd n.r.e.).

Affirmed.