Opinion issued October 7, 2004










In The
Court of Appeals
For The
First District of Texas




NO. 01-04-00568-CV




RAY FERGUSON INTERESTS, INC., Appellant

V.

HARRIS COUNTY SPORTS AND CONVENTION CORPORATION,
Appellee




On Appeal from the 334th District Court
Harris County, Texas
Trial Court Cause No. 2002-24579






O P I N I O N

          Appellant, Ray Ferguson Interests, Inc. (“Ferguson”), appeals from an
interlocutory order granting the jurisdictional plea of Harris County Sports and
Convention Corporation (“HCSCC”).


 See Tex. Civ. Prac. & Rem. Code Ann. §
51.014(a)(8) (Vernon Supp. 2004-2005). We determine whether HCSCC’s
counterclaim for affirmative relief against Ferguson waived HCSCC’s immunity from
suit for Ferguson’s claims. Answering in the affirmative, we reverse the order and
remand the cause with instructions for the trial court to deny HCSCC’s jurisdictional
plea.
Standard of Review
          In deciding a plea to the jurisdiction, a trial court considers the plaintiff’s
pleadings and any evidence pertinent to the jurisdictional inquiry. See Bland Indep.
Sch. Dist. v. Blue, 34 S.W.3d 547, 555 (Tex. 2000); see also Tex. Natural Res. 
Conservation Comm’n v. White, 46 S.W.3d 864, 868 (Tex. 2001). We review de
novo a trial court’s ruling on a jurisdictional plea, construing the pleadings in the
plaintiff’s favor and looking to the pleader’s intent. See Tex. Natural Res.
Conservation Comm’n v. IT-Davy, 74 S.W.3d 849, 855 (Tex. 2002); Tex. Ass’n of
Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993); Junemann v. Harris
County, 84 S.W.3d 689, 693 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). 
Background
          The parties submitted no evidence; thus, our facts come from Ferguson’s
petition, viewed in Ferguson’s favor. See Tex. Ass’n of Bus., 852 S.W.2d at 446.
          In 1999, HCSCC awarded Ferguson a contract to build parking lots and
ancillary facilities at Reliant Stadium (“the project”). HCSCC worked on the project
with three other companies that drafted plans and specifications and functioned as the
design team. After HCSCC had issued Ferguson a certificate of substantial
completion in 2000, problems occurred with some of the project’s structures. 
Ferguson alleged that the problems arose solely through the fault of HCSCC, its
engineers, and its other contractors. HCSCC demanded that Ferguson perform
warranty work and withheld a $300,000 retainage fee from Ferguson. Ferguson
alleged that it expended over $400,000 in performing remedial work while trying to
negotiate a change order with HCSCC, but ceased work when the parties did not
reach a resolution.
          Ferguson sued HCSCC and its design-team contractors. Ferguson asserted
against HCSCC claims for breach of implied warranty, breach of contract, and
negligence in failing to provide Ferguson with plans and specifications that were
accurate and suitable and for hiring architects who were not sufficiently experienced. 
Ferguson further asserted against all of the defendants claims for (1) fraud in
withholding material information and (2) civil conspiracy for withholding
information from Ferguson, blaming Ferguson for the project’s problems, and giving
remedial work to others, rather than to Ferguson. Ferguson also sued one of
HCSCC’s three contractors for negligence. Ferguson sought actual and punitive
damages and attorney’s fees.
          After answering and asserting a counterclaim for damages, HCSCC filed a
jurisdictional plea to each of Ferguson’s claims. The trial court granted HCSCC’s
plea and dismissed Ferguson’s claims against HCSCC with prejudice.
Waiver of Immunity from Suit

          In its first issue, Ferguson asserts, as it did below, that HCSCC waived its
governmental immunity from Ferguson’s claims against it by asserting a counterclaim
for affirmative relief that arose out of and related to Ferguson’s claims. HCSCC
responds that it did not waive immunity from suit because its counterclaim was
compulsory, not permissive, and, alternatively, because public policy weighs against
finding that it waived immunity from suit under these circumstances.
          HCSCC is a local government corporation created under the Transportation
Code. See Tex. Transp. Code Ann. § 431.101(a) (Vernon Supp. 2004-2005). The
purpose of such a corporation is to aid and to act on behalf of one or more local
governments to accomplish their governmental purposes. See id. § 431.101(a), (c)
(Vernon 1999). The Transportation Code defines local government corporations as
governmental units, as that term is defined in the Texas Tort Claims Act (“TTCA”).


 
See id. § 431.108(a) (Vernon Supp. 2004-2005). Accordingly, HCSCC is entitled to
governmental immunity from suit unless that immunity is waived. See, e.g., IT-Davy,
74 S.W.3d at 853.
          Ferguson asserts that the Texas Supreme Court’s recent holding in Reata
Construction Corp. v. City of Dallas controls. Id., 02-1031, 2004 WL 726906 (Tex.
Apr. 2, 2004). The issue in Reata was “whether a city waives its governmental
immunity from suit by intervening in a lawsuit to assert claims for affirmative relief.” 
Id. at *1. In Reata, Southwest Properties Group, Inc. (“Southwest”) sued Dynamic
Cable Construction Company, Inc. (“Dynamic”) and its sub-contractor, Reata
Construction (“Reata”), for negligence after Reata had drilled into a water main,
causing water damage to Southwest’s building. Id. Reata filed a third-party claim
against the City of Dallas (“the city”), alleging that the city had misidentified the
water main’s location. Id. The city specially excepted, asserting that the TTCA did
not waive governmental immunity from suit for Reata’s claims. Id. The city also
intervened in Southwest’s suit against Reata and Dynamic to assert claims against
Dynamic. Id. The city later amended its intervention petition to assert a negligence
claim against Reata, seeking damages, interest, and costs. Id. The city did not file
a jurisdictional plea to Reata’s claims against it until the day after it had pled its
counterclaim against Reata. Id. The trial court denied the city’s jurisdictional plea,
and the court of appeals reversed that order. Id. The supreme court reversed the
court of appeals’s judgment, holding that the city had waived immunity from suit by
intervening and asserting a claim for damages against Reata. Id. at *3.
          The Reata court first reaffirmed its prior holdings that, when a governmental
entity “‘voluntarily files a suit and submits its rights for judicial determination, it will
be bound thereby, and the defense will be entitled to plead and prove all matters
properly defensive. This includes the right to make any defense by answer or cross-complaint germane to the matter in controversy.’” Id. at *2 (quoting Anderson,
Clayton & Co. v. State ex rel. Allred, 62 S.W.2d 107, 110 (Tex. 1933)). Based on this
precedent, the Reata court held, “[B]y filing a suit for damages, a governmental entity
waives immunity from suit for any claim that is incident to, connected with, arises out
of, or is germane to the suit or controversy brought by the State.” Id. at *3 (emphasis
added). Based on this law and on the nature of the city’s and Reata’s claims, the
Reata court noted that, had the city filed an original petition against Reata, the city
would have waived its immunity from suit regarding Reata’s claims against it related
to the incident. Id. The Reata court then concluded that, “for purposes of waiver of
governmental immunity from suit, we see no reason to differentiate between a
governmental entity as a plaintiff and as a plaintiff-intervener.” Id. The court
reasoned that the city “had the option to file its own suit, or in the interest of judicial
economy, intervene in Southwest’s suit.” Id. Accordingly, the court held that
“[w]hen the City filed its plea in intervention against Reata, it subjected itself to the
jurisdiction of the trial court and waived its governmental immunity from suit with
regard to Reata’s claims germane to the matter in controversy.” Id. (emphasis
added).
          We recognize an analogous situation in the cause before us. Here, as did the
city in Reata, HCSCC asserted claims for affirmative relief. HCSCC’s counterclaim
against Ferguson, filed in January 2003, sought damages and attorney’s fees for
Ferguson’s alleged breach of contract:
Plaintiff [Ferguson] is liable to HCSCC for breach of contract. 
[Ferguson] breached the contract with HCSCC by failing to complete
the work it was obligated to perform according to the agreement of the
parties. HCSCC has incurred substantial damages as a direct result of
[Ferguson’s] foregoing actions and inactions[,] for which it seeks
recovery from [Ferguson].




“‘To qualify as a claim for affirmative relief, a defensive pleading must allege that the
defendant has a cause of action, independent of the plaintiff’s claim, on which he
could recover benefits, compensation or relief, even though the plaintiff may abandon
his cause of action or fail to establish it.’” Gen. Land Office v. OXY U.S.A., Inc., 789
S.W.2d 569, 570 (Tex. 1990) (quoting Weaver v. Jock, 717 S.W.2d 654, 657 (Tex.
App.—Waco 1986, writ ref’d n.r.e.), in context of plaintiff’s right to nonsuit). 
Although some counterclaims may not seek affirmative relief,


 HCSCC’s
counterclaim clearly did.


 Also as in Reata, HCSCC did not file its jurisdictional plea
until after it had filed its original counterclaim—over six months afterwards, in fact.
          Finally, as in Reata, HCSCC’s contract-breach counterclaim is “incident to,
connected with, arises out of, or is germane to” the “matter in controversy” between
HCSCC and Ferguson and to Ferguson’s claims. Reata, 2004 WL 726906, at * 3 (in
part, quoting from Anderson, Clayton & Co.). Ferguson’s live petition alleged that
HCSCC breached the parties’ contract by failing to issue Ferguson a change order to
correct design deficiencies, failing to direct Ferguson to perform “warranty work,”
failing to pay Ferguson its retainage fee, failing to issue a certificate of final
completion, and failing to provide Ferguson with accurate, complete, and suitable
design plans and specifications. Ferguson also alleged that HCSCC had breached
implied warranties by failing to provide plans and specifications that were accurate
and suitable for Ferguson’s work. Ferguson further alleged that HCSCC had
committed fraud by withholding material information regarding the project. 
Additionally, Ferguson alleged that HCSCC was negligent in failing to provide plans
and specifications that were accurate and suitable and in hiring insufficiently
experienced architects for the project. Finally, Ferguson’s claim for civil conspiracy
alleged that HCSCC and the other defendants withheld material information from
Ferguson, blamed Ferguson for the project’s problems, and gave remedial work to
outside parties and to Ferguson’s subcontractors, rather than to Ferguson. 
          Our sister court of appeals has recently concluded that the term
“germane”—both in its general meaning and in the “incident to, connected with,
arises out of, or is germane to” holding from Reata—is not narrower in scope than the
test for a compulsory counterclaim. City of Dallas v. Redbird Dev. Corp., No. 05-03-01155-CV, 2004 WL 1852782, at *3-5 (Tex. App.—Dallas Aug. 9, 2004, no pet. h.). 
Accordingly, our sister court read Reata’s phrase “incident to, connected with, arises
out of, or is germane to” rather broadly to include claims that “arise from the same
transaction” and that “depend[] on facts pertinent to the parties’ conduct regarding
the same” transaction. Id. at *5 (holding that city plaintiff, which had sued private-entity defendant for unpaid rent and late charges under lease, thereby waived
immunity from suit for defendant’s counterclaims for breach of contract in city’s
wrongfully terminating same lease). The claims that Ferguson asserts fit this test. 
See id.; see also State v. Fid. & Deposit Co. of Md., 127 S.W.3d 339, 344-45 (Tex.
App.—Austin 2004, pet. filed) (holding that State plaintiff, which sued defendant
bond company for failure to perform under performance bond insuring contractor
who had defaulted, waived immunity from suit for defendant’s counterclaims for
State’s having improperly terminated the insured and for having breached subsequent
“takeover agreement,” under which bond company had contracted with State to
complete insured’s work; counterclaims “relate[d] to same core factual and legal
issues”); City of Carrollton v. Golf Works, Inc., No. 05-03-01831-CV, 2004 WL
1700229, at *1 (Tex. App.—Dallas July 30, 2004, no pet.) (memo. op.) (holding that
State’s suing private-entity defendant for breach of contract waived immunity from
suit for defendant’s counterclaims for tort and breach of contract).
          The principal difference between this case and Reata is that the governmental
entity in Reata intervened to assert affirmative relief, whereas HCSCC
counterclaimed to do so. We conclude that this distinction does not warrant a
different result in the circumstances before us. “Any party may intervene by filing
a pleading, subject to being stricken out by the court for sufficient cause on the
motion of any party.” Tex. R. Civ. P. 60. One has the right to intervene if one “could
have brought the same action, or any part thereof, in his own name, or if the action
had been brought against him, he would be able to defeat recovery, or some part
thereof.” Guar. Fed. Sav. Bank v. Horseshoe Operating Co., 793 S.W.2d 652, 657
(Tex. 1990). Like an intervener, one asserting a counterclaim for affirmative relief
is also asserting the type of claim that could be brought in his own name if he filed
his own suit. See OXY U.S.A., Inc., 789 S.W.2d at 570 (defining claim for affirmative
relief as “‘defensive pleading . . . alleg[ing] that the defendant has a cause of action,
independent of the plaintiff’s claim, on which he could recover benefits,
compensation or relief, even though the plaintiff may abandon his cause of action or
fail to establish it.’”) (quoting Weaver, 717 S.W.2d at 657).
          Two of our sister courts of appeals have recently applied Reata’s holding to
situations in which a governmental entity has asserted a counterclaim for affirmative
relief. See City of Dallas v. Martin, 140 S.W.3d 924, 926 (Tex. App.—Dallas 2004,
no pet. h.); City of Irving v. Inform Constr., Inc., No. 05-03-01460-CV, 2004 WL
1852795, at *3 (Tex. App.—Dallas Aug. 9, 2004, no pet. h.) (so holding despite fact
that city’s counterclaim was compulsory); City of Dallas v. Albert, 140 S.W.3d 920,
922-23 (Tex. App.—Dallas 2004, pet. granted); Port Neches-Groves Indep. Sch. Dist.
v. Pyramid Constructors, L.L.P., 140 S.W.3d 440, 442-43 (Tex. App.—Beaumont
July 1, 2004, pet. filed). On this Court, Justice Hanks has reached the same
conclusion as we now do. See Metro. Transit Auth. v. MEB Eng’g, Inc., No. 01-04-00022-CV, 2004 WL 1584958, at *3-5 (Tex. App.—Houston [1st Dist.] July 15,
2004, no pet. h.) (Hanks, J., concurring). We join Justice Hanks and so hold for the
Court.



          HCSCC responds that the rule in Reata does not apply because HCSCC’s
counterclaim was compulsory, not permissive, thereby rendering HCSCC’s assertion
of that counterclaim involuntary. For a counterclaim to be compulsory, the following
criteria must exist: “(1) [the counterclaim] is within the jurisdiction of the court; (2)
it is not at the time of filing the answer the subject of a pending action; (3) the claim
is mature and owned by the defendant at the time of filing the answer; (4) it arose out
of the same transaction or occurrence that is the subject matter of the opposing party’s
claim; (5) it is against an opposing party in the same capacity; and (6) it does not
require the presence of third parties over whom the court cannot acquire jurisdiction.” 
Ingersoll-Rand Co. v. Valero Energy Corp., 997 S.W.2d 203, 207 (Tex. 1999) (citing,
among other authority, Tex. R. Civ. P. 97(a), (d)). The doctrine of res judicata will
bar a party who fails to assert a compulsory counterclaim from asserting that claim
in a later suit. Ingersoll-Rand Co., 997 S.W.2d at 207.
          If a governmental entity truly enjoys immunity from a plaintiff’s claims, then
the entity’s failure to assert its counterclaims for affirmative relief—even
counterclaims that would normally be considered compulsory—cannot have the
preclusive effect that a such a failure would have in other contexts. Governmental
immunity from suit deprives the trial court of subject-matter jurisdiction over a
plaintiff’s claims against a governmental entity. See Harris County v. Sykes, 136
S.W.3d 635, 638 (Tex. 2004). Accordingly, when a trial court determines that a
governmental entity’s immunity from suit has not been waived, the court has no
subject-matter jurisdiction to consider the plaintiff’s claims, and the court must thus
grant the entity’s jurisdictional plea and dismiss the cause. See id. at 639. In that
situation, the governmental-entity defendant need not assert any counterclaim for
affirmative relief because, there being no plaintiff’s claim over which the court may
exercise jurisdiction, there can be no bar on the merits if the governmental entity later
files its own suit on its related claims. See Compania Financiara Libano, S.A. v.
Simmons, 53 S.W.3d 365, 367 (Tex. 2001) (“The doctrine of res judicata . . . holds
that a final judgment in an action bars the parties and their privies from bringing a
second suit ‘not only on matters actually litigated, but also on causes of action or
defenses which arise out of the same subject matter and which might have been
litigated in the first suit.’”) (quoting Barr v. Resolution Trust Corp., 837 S.W.2d 627,
630 (Tex. 1992)) (emphasis added). 
          If, in contrast, a court determines that a defendant governmental entity enjoys
no immunity from suit for a plaintiff’s claim and thus denies the entity’s jurisdictional
plea, the governmental entity then must assert its compulsory counterclaim for
affirmative relief, as any other defendant would have to do. The proper procedure is
thus for the defendant governmental entity to file and to seek a ruling on its
jurisdictional plea before filing what would normally be a compulsory counterclaim
for affirmative relief. Alternatively, the governmental entity could first file its
jurisdictional plea, then file its “compulsory” counterclaim for affirmative relief
expressly subject to its jurisdictional plea and contingent upon the plea’s denial. 
HCSCC did neither of these things. The assertion of its counterclaim for affirmative
relief was thus voluntary and constituted a waiver of its immunity from suit for
Ferguson’s claims that were “germane to the matter in controversy.” See Reata, 2004
WL 726906, at *3.
 
          HCSCC alternatively argues that public policy considerations caution against
recognizing the assertion of its affirmative counterclaim as a waiver of its immunity
from suit. However, HCSCC’s policy arguments presume that its counterclaim was
compulsory and that HCSCC would thus have to assert the claim in this suit or be
forever barred. We have already rejected this premise.
          Moreover, our holding is correct for another reason. If HCSCC had filed its
own lawsuit asserting its claim against Ferguson, Ferguson could unquestionably
have prosecuted any counterclaims that were “incident to, connected with, ar[ose] out
of, or [were] germane to” HCSCC’s suit. See Reata, 2004 WL 726906, at *3. 
However, if HCSCC’s position is correct, then simply because Ferguson sued first,
HCSCC may assert the same claim in the form of a counterclaim, but Ferguson may
assert no claim against HCSCC, even if that claim is incident to, connected with,
arises out of, or is germane to HCSCC’s counterclaim. In short, HCSCC’s position
allows it to assert its own claims while still shielding itself behind an immunity that
would otherwise be unavailable in analogous circumstances. This cannot be the law. 
 
 
          For these reasons, we sustain Ferguson’s first issue.


 Given our disposition of
this issue, we need not reach Ferguson’s second issue, which asserts that the
Transportation Code’s incorporation by reference of a provision containing “sue and
be sued” language within the Non-Profit Corporation Act also waived HCSCC’s
immunity from suit. See Tex. Transp. Code Ann. §§ 431.062(a), 431.101(b), (c)
(Vernon 1999 & Supp. 2004-2005); id. § 431.006 (Vernon 1999); Tex. Rev. Civ.
Stat. Ann. art. 1369-2.02(A)(2) (Vernon 2003).
Conclusion
          We reverse the order and remand the cause with instructions for the trial court
to deny HCSCC’s jurisdictional plea.
 
                                                                        Tim Taft
                                                                        Justice
 
Panel Consists of Justices Taft, Jennings, and Bland.