# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-24-00433-CV

---

**M. Armstrong, Appellant**

**v.**

**Fred H. Thomas, Appellee**

---

### FROM THE 455TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-GN-23-003768, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

In this real property dispute, the trial court granted summary judgment declaring an agreement to purchase certain property executed by appellant M. Armstrong and appellee Fred H. Thomas unenforceable and quieting title to the property in Thomas's favor. By three issues that we have reordered, Armstrong argues that the trial court erred by: (1) failing to issue findings of fact and conclusions of law, (2) granting summary judgment, as a fact issue persisted, and (3) granting summary judgment after Armstrong nonsuited her claims. We affirm.

### I.    BACKGROUND[1]

Armstrong and Thomas married in 1992 and lived together in a home located on Knollwood Drive in Austin, Texas (the Property). On December 20, 2013, the parties signed two

---

[1] We derive the factual background from the summary-judgment evidence.

separate agreements. The first, an agreement incident to the parties' pending divorce (the AID), provided that any real property in Thomas's name would be confirmed as his separate property when the parties' pending divorce was finalized. The AID included a merger clause, which provided that the AID "supersede[d] all other agreements, either oral or in writing, between the parties relating to the rights and liabilities arising out of their marriage" and that it "contain[ed] the entire agreement of the parties." A final decree of divorce was signed on January 22, 2014, and incorporated the terms of the AID. Both the AID and the divorce decree provided that Armstrong "partitions, quitclaims, assigns and conveys to [Thomas] . . . . [a]ny real property in the name of [Thomas]."

The second agreement (the Agreement) reads in its entirety as follows:[2]

Agreement between FHT and MA
12-20-2013

FHT agrees to sell the current HS property to MA at a price of
_$750,000_____, financed at a rate of ____4%_____ for _10_ years.

Down payment will be sufficient to pay off FHT's current residence of abt $150,000.
_balance on an interest only note with no scheduled principal reductions during the first five years and no prepayment penalty._
____FHT_____ 20 Dec 2013
FHT


____MA_____ 20 Dec 2013
MA

---

[2] Armstrong attested that the handwritten amendment at the bottom of the Agreement reads: "Balance on an interest only note with no scheduled principal reductions during the first five years with no prepayment penalty."

2

Armstrong explained that, contemporaneously with the execution of the Agreement, Thomas orally agreed to draft the necessary closing documents. On January 30, Armstrong wrote Thomas a check for $40,000, which he deposited. According to Armstrong, this payment was made "in good faith for the Property purchase and [Thomas's] promise to provide the closing papers." After the divorce, Armstrong continued living on the Property with Thomas's permission. Armstrong paid for various improvements to the Property, and Thomas paid the property taxes and insurance. Armstrong attested that, over the years, she and Thomas discussed their agreement to allow her to purchase the Property, and that "[o]n numerous occasions . . . [they] discussed the closing on the property, but [Thomas] failed to draft the closing documents." Specifically, Armstrong recounted one incident on July 17, 2017, during which Thomas "once again . . . agreed to provide the closing papers, but . . . never did."

In the summer of 2023, Thomas began sending Armstrong notices to vacate the Property. In September 2023, Armstrong hired an attorney to help her draft the necessary closing documents. Armstrong provided these documents to Thomas, who responded, "the offer is rejected."

Thomas moved forward with eviction proceedings in justice court, and Armstrong filed suit in district court, seeking to enforce the Agreement. The parties agreed to abate the eviction proceedings and to allow Armstrong's suit to continue. Thomas raised counterclaims for trespass to try title, and to quiet title, and he sought a declaration that the Agreement was unenforceable. Thomas also asserted the affirmative defense of limitations.

Thomas later filed a traditional motion for summary judgment, seeking to declare the Agreement unenforceable and to quiet any claim Armstrong may have to his title to the Property. Thomas argued that the Agreement was unenforceable because: (1) the AID controlled;

3

(2) the Agreement was missing essential terms; and (3) the applicable statute of limitations had lapsed. Attached to Thomas's motion for summary judgment were documents establishing his chain of title to the Property, including a gift deed from Thomas's parents to Thomas, the parties' AID, and the final decree of divorce.

Armstrong responded, arguing that she was not disputing that Thomas acquired title to the Property in the divorce. Rather, Armstrong contended that the Agreement and AID address different matters; "[t]he Agreement addresses the sale of the [P]roperty to [Armstrong], and the divorce orders address the obtaining of the [P]roperty in [Thomas]'s name so that he can effectuate the Agreement he made with [Armstrong]." After a hearing on the motion for summary judgment, Armstrong moved to nonsuit her claims. The trial court granted Thomas's motion for summary judgment, concluding that the Agreement was unenforceable, removing any cloud the Agreement cast on Thomas's title, and awarding Thomas $27,510.04 in reasonable and necessary attorney's fees. The court also acknowledged Armstrong's nonsuit of her claims.

Armstrong filed a motion for new trial, which the trial court denied. This appeal followed.

## II.     FINDINGS OF FACT AND CONCLUSIONS OF LAW

By her first issue, Armstrong argues that the trial court erred by failing to issue findings of fact and conclusions of law in conjunction with its decision to grant Thomas's motion for summary judgment and deny Armstrong's motion for new trial. We disagree for two reasons.

First, the record does not reflect that Armstrong requested any findings of fact and conclusions of law. A trial court has no obligation to issue findings of fact and conclusions of law when they are neither statutorily required nor properly requested. *See Lemons v. EMW Mfg. Co.*,

4

747 S.W.2d 372, 373 (Tex. 1988). Second, and more importantly, "findings of fact and conclusions of law have no place in a summary judgment proceeding." *Linwood v. NCNB Tex.*, 885 S.W.2d 102, 103 (Tex. 1994); *Gardner v. Abbott*, 414 S.W.3d 369, 380 (Tex. App.—Austin 2013, no pet.). It would have been inappropriate for the trial court to issue findings of fact and conclusions of law in this summary-judgment proceeding. *See Gardner*, 414 S.W.3d at 380. Accordingly, we conclude that the trial court did not err by failing to issue findings of fact and conclusions of law in this case, and we overrule this issue.

## III. SUMMARY JUDGMENT

By her second issue, Armstrong contends that the trial court erred in granting summary judgment.

### A. Standard of Review

"We review summary judgments de novo, taking as true all evidence favorable to the nonmovant, and indulging every reasonable inference and resolving any doubts in the nonmovant's favor." *Weekley Homes, LLC v. Paniagua*, 691 S.W.3d 911, 915 (Tex. 2024) (quoting *Energen Res. Corp. v. Wallace*, 642 S.W.3d 502, 509 (Tex. 2022)). "In a traditional motion for summary judgment, the moving party must show that no genuine dispute exists as to any material fact such that the party is entitled to judgment as a matter of law." *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021). "If the nonmovant brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact, summary judgment is improper." *Wal-Mart Stores, Inc. v. Xerox State & Loc. Sols., Inc.*, 663 S.W.3d 569, 576 (Tex. 2023).

**B.     Analysis**

The trial court's summary judgment concluded that the parties' Agreement was unenforceable, and it quieted title to the Property in Thomas's favor. At the outset, we note that Armstrong argues that the trial court erroneously excluded her affidavit from consideration. However, there is no indication in the record that the trial court excluded her affidavit from the summary-judgment record. Armstrong bases this assertion on statements the trial judge made at the hearing on Armstrong's motion for new trial. Specifically, at that hearing, the trial judge explained that she thought the affidavit was "virtually worthless" since it referred to the parties only by their initials, rather than their full, legal names, describing "its weight as de minim[i]s" because "it could be about anybody," and stating, "I'm not going to consider it." But Thomas did not contend that there was any legitimate confusion about whether Armstrong or another M.A. signed the affidavit. In any event, the trial judge made these statements in the context of the hearing on the motion for new trial. Because the trial court did not make any orders excluding the affidavit from the summary-judgment record, we consider the affidavit in our analysis in the light most favorable to Armstrong. And in our consideration of the affidavit, we nonetheless conclude that it fails to raise a fact issue.

"A claim 'to quiet title is traditionally one in which the superior title holder seeks to remove a challenge to that title.'" *Faith P. & Charles L. Bybee Found. v. Knutzen*, 681 S.W.3d 818, 828 (Tex. App.—Austin 2023, no pet.) (quoting *Brumley v. McDuff*, 616 S.W.3d 826, 835 (Tex. 2021)). "A suit to clear or quiet title . . . relies on the invalidity of the defendant's claim to the property." *Guiterrez v. Lorenz*, No. 14-18-00608-CV, 2020 WL 1951606, at *6 (Tex. App.—Houston [14th Dist.] Apr. 23, 2020, no pet.) (mem. op.). "Thus, the plaintiff in a quiet-title suit must prove, as a matter of law, that he has a right of ownership and that the adverse

6

claim is a cloud on the title that equity will remove." *Knutzen*, 681 S.W.3d at 828–29 (citation modified) (quoting *Brumley*, 616 S.W.3d at 835). "A cloud on title exists when an outstanding claim or encumbrance is shown, which on its face, if valid, would affect or impair the title of the owner of the property." *Hahn v. Love*, 321 S.W.3d 517, 531 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (quoting *Angell v. Bailey*, 225 S.W.3d 834, 838 n.6 (Tex. App.—El Paso 2007, no pet.)). "Any deed, contract, judgment or other instrument not void on its face that purports to convey an interest in or make any charge upon the land of a true owner, the invalidity of which would require proof, is a cloud upon the legal title of the owner." *Id.* (quoting *Johnson v. Williams*, No. 01-05-00445-CV, 2006 WL 1653656, at *4 (Tex. App.—Houston [1st Dist.] June 15, 2006, pet. denied) (mem. op.)). "[A] document need not be recorded to constitute a cloud on title." *In re Stroud Oil Props., Inc.*, 110 S.W.3d 18, 27 (Tex. App.—Waco 2002, orig. proceeding).

Here, Thomas argued below that the parties' Agreement was unenforceable, and thus should be removed as a cloud on his title, because: (1) the AID "precludes the effectiveness of any agreement that might alter or waive[ its] terms"; (2) the Agreement is governed by the statute of frauds and lacks essential terms; and/or (3) the statute of limitations for its enforcement had expired. Because it is dispositive, we address the second ground Thomas raised in his motion.

Thomas argued that the Agreement was unenforceable, as it lacked essential terms. The statute of frauds applies to a contract to purchase real property. Tex. Bus. & Com. Code § 26.01(b)(4). To satisfy the statute of frauds, the contract must contain, in writing, all essential terms "expressed with such certainty and clarity that it may be understood without recourse to parol evidence to show the intention of the parties." *ConocoPhillips Co. v. Hahn*, 704 S.W.3d 515, 533 (Tex. 2024) (quoting *Wilson v. Fisher*, 188 S.W.2d 150, 152 (Tex. 1945)). "Material and essential terms are those that the parties would consider 'vitally important

7

ingredients' to their agreement and are determined on a case-by-case basis." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 481 (Tex. 2019). Here, the Agreement did not specify the closing date for the sale of the Property. *See Mr. W Fireworks, Inc. v. NRZ Inv. Grp.*, 677 S.W.3d 11, 27 (Tex. App.—El Paso 2023, pet. denied) ("[T]he closing date in a sales contract is a material term."); *Garrod Invs., Inc. v. Schlegel*, 139 S.W.3d 759, 764–64 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) ("The closing date of a contract for the sale of real estate is a material term."); *see also Rolfe v. King*, No. 05-03-00357-CV, 2004 WL 784626, at *2 (Tex. App.—Dallas Mar. 29, 2004, no pet.) (mem. op.); *cf. Thedford Crossing, L.P. v. Tyler Rose Nursery, Inc.*, 306 S.W.3d 860, 868 (Tex. App.—Tyler 2010, pet. denied) (where real-estate contract contained location of acreage conveyed, price, and closing date, contract was enforceable). Additionally, the contract did not specify how Armstrong would finance the purchase of the property, such as the amount, timing, and manner of payments, *see Potcinske v. McDonald Prop. Invs., Ltd.*, 245 S.W.3d 526, 530 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (concluding such terms were essential to contract formation), nor did it include any provisions concerning "title insurance, inspections, prorations, or earnest money," *see Rolfe v. King*, No. 05-03-00357-CV, 2004 WL 784626, at *2 (Tex. App.—Dallas Mar. 29, 2004, no pet.) (mem. op.).

On appeal, Armstrong does not dispute that these were essential terms. Rather, in her reply brief, she argues that Thomas's contention that the Agreement was missing essential terms should be unavailing because "the essential terms of the contract were provided by [Armstrong] to [Thomas] after [Thomas] refused to follow through on his promise to sell the

subject property to [Armstrong]."[3] Separate writings can sometimes be used to supply the essential terms of a contract governed by the statute of frauds, but only when those separate writings are agreed to by both parties. *See Copano Energy, LLC v. Bujnoch*, 593 S.W.3d 721, 731 (Tex. 2020). If the parties disagree as to the essential terms, there is no meeting of the minds and thus, no enforceable contract. *See id.* Because the record indicates that the parties never reached an agreement as to the essential elements of the Agreement, we conclude that the trial court did not err by declaring the Agreement unenforceable and by quieting title to the Property in Thomas's

---

[3] We note that in her opening brief, Armstrong's substantive analysis of the merits of the court's summary judgment amounts to the following statement: "[Armstrong]'s affidavit creates issues of fact on many, if not all, of the elements that [Thomas] was required to prove to be entitled to judgment as a matter of law." Armstrong did not specify which portions of her affidavit created a fact issue, or on what elements they created a fact issue. "When a trial court's order granting summary judgment does not specify the grounds on which its order is based, the appealing party must negate each ground upon which the judgment could have been based." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022). "A party may negate each ground by raising separate issues 'or asserting a general issue that the trial court erred in granting summary judgment and within that issue providing argument negating all possible grounds upon which summary judgment could have been granted.'" *Id.* at 227 (quoting *Jarvis v. Rocanville Corp.*, 298 S.W.3d 305, 313 (Tex. App.—Dallas 2009, pet. denied)). In her opening brief, Armstrong asserted a general issue but did not discuss whether the trial court may have erred by granting summary judgment on the individual grounds raised in Thomas's motion. *But see* Tex. R. App. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

The language quoted in the body of the opinion above derives from Armstrong's reply brief, as it was not until her reply brief that Armstrong directly addressed the individual grounds raised in Thomas's motion for summary judgment. Parties are not permitted to raise new issues for the first time in a reply brief. *See In re Commitment of Gipson*, 580 S.W.3d 476, 488 n.6 (Tex. App.—Austin 2019, no pet.). Nevertheless, to the extent that the arguments raised in Armstrong's reply brief merely expound on the issue raised in her opening brief or reply to Thomas's briefing of this issue, we address them. *See McAlester Fuel Co. v. Smith Int'l, Inc.*, 257 S.W.3d 732, 737 (Tex. App.—Houston [1st Dist.] 2007, pet. denied) ("[W]e address only those contentions asserted in the reply brief that can be construed to expound on [appellant]'s second issue presented in its opening brief or that reply to issues fully briefed by [appellee].").

favor.[4] *See id.*; Tex. Bus. & Com. Code § 26.01(a). Accordingly, we overrule Armstrong's second issue.

## IV. NONSUIT

By her third and final issue, Armstrong argues that the trial court erred by failing to dismiss the case after she filed a nonsuit. However, "a nonsuit 'shall not prejudice the right of an adverse party to be heard on a pending claim for affirmative relief.'" *Villafani v. Trejo*, 251 S.W.3d 466, 469 (Tex. 2008). "To qualify as a claim for affirmative relief, a defensive pleading must allege that the defendant has a cause of action, independent of the plaintiff's claim, on which he could recover benefits, compensation or relief, even though the plaintiff may abandon his cause of action or fail to establish it." *General Land Off. of Tex. v. OXY U.S.A., Inc.*, 789 S.W.2d 569, 570 (Tex. 1990) (quoting *Weaver v. Jock*, 717 S.W.2d 654, 657 (Tex. App.— Waco 1986, writ ref'd n.r.e.)). "The use of a creative pleading that merely restates defenses in the form of a declaratory judgment action" does not defeat a plaintiff's right to nonsuit. *Indian Beach Prop. Owners' Ass'n v. Linden*, 222 S.W.3d 682, 701 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (quoting *BHP Petrol. Co. v. Millard*, 800 S.W.2d 838, 840 (Tex. 1990)). "In certain instances, however, a defensive declaratory judgment may present issues beyond those raised by the plaintiff." *Millard*, 800 S.W.2d at 841. For instance, where the defendant's declaratory-judgment counterclaim "has greater ramifications" than the plaintiff's nonsuited claims, it is an affirmative claim for relief. *Id.* at 842.

In her live pleading, Armstrong sought to enforce the purported contract between the parties to allow her to purchase the Property. In his live pleading, Thomas sought a declaration

---

[4] Armstrong does not challenge the trial court's award of attorney's fees.

that he possessed superior and clear title to the Property, that Armstrong should be required to vacate the premises, and that any cloud to his title be removed. This requested relief has greater ramifications than Armstrong's nonsuited claims, and thus, is an affirmative claim for relief that could not be affected by her nonsuit. *See id.* (citing *Winslow v. Acker*, 781 S.W.2d 322, 323, 328 (Tex. App.—San Antonio 1989, writ denied) (nonsuit of plaintiffs' suit to recover share of overriding royalties in mineral estate could not affect defendant's counterclaim for declaration of defendants' rights to overriding royalties in mineral estate)); *see also Texas Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 38 (Tex. 2008) (Rule 162 "prohibits dismissal if the effect would be to prejudice any pending claim for affirmative relief, period"); *Short v. Hepburn*, 35 S.W. 1056, 1057 (Tex. 1896) ("In an action of trespass to try title, the defendant may, in addition to his defensive pleas, set up . . . his own right and claim to the land, and, by appropriate allegations, seek an affirmative recovery against the plaintiff."); *Flores v. Garcia*, No. 13-23-00477-CV, 2024 WL 3533061, at *2 (Tex. App.—Corpus Christi–Edinburg July 25, 2024, no pet.) (mem. op.) ("While Garcia had the right to dismiss his own [title and conversion claims], his action did not operate to terminate Flores's title and possession claim."). Accordingly, we conclude that the trial court did not commit reversible error by refusing to dismiss the entire case, and we overrule Armstrong's final issue.

## V. REQUEST FOR DAMAGES UNDER RULE 45

Lastly, Thomas filed a motion to award damages pursuant to Texas Rule of Appellate Procedure 45, contending that Armstrong's appeal is frivolous. To determine whether an appeal is frivolous, "[w]e review the record from the advocate's viewpoint and decide whether he had reasonable grounds to believe the judgment could be reversed." *Jones v. Heslin*,

11

No. 03-19-00811-CV, 2020 WL 1452025, at *6 (Tex. App.—Austin Mar. 25, 2020, pet. denied) (mem. op.). "Whether to grant sanctions for a frivolous appeal is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances." *Ashraf v. Ashraf*, No. 03-11-00467-CV, 2012 WL 1948347, at *9 (Tex. App.—Austin May 24, 2012, no pet.) (mem. op.). Having reviewed the record through the appropriate lens, we conclude that this appeal does not present "truly egregious circumstances" for which we would award damages. *See id.* We deny Thomas's motion.

## VI. CONCLUSION

We affirm the trial court's final summary judgment.

_____

Maggie Ellis, Justice

Before Chief Justice Byrne, Justices Kelly and Ellis

Affirmed

Filed: May 7, 2026

12